S. CAHN v. JAMES G. JOHNSON & CO., ET AL.

No. 930.

**1. Receiver—Grounds for Appointment—Creditor without Lien.**

A court of equity will not, in the absence of statutory authority, grant its aid by appointing a receiver for the property of a debtor in favor of general creditors whose claims have not been reduced to judgment, and who have acquired no lien on the property of the debtor.

**2. Same—Right of Attaching Creditor.**

Attaching creditors who have levied on a part of the property of a debtor, having an adequate remedy at law, are not entitled to have a receiver for the remaining property appointed or continued, in order that the proceeds of such other property may be properly applied to the satisfaction of the debts of preferred creditors, thereby obviating the necessity of such preferred creditors resorting to the attached property for their debts.

APPEAL from Bexar. Tried below before Hon. S. G. NEWTON.

*Lewy & Seahorn,* for appellant.—1. A mere contract creditor of an insolvent debtor, without lien or execution, cannot invoke the aid of a court of equity for the appointment of a receiver of the property of such insolvent debtor, even though such debtor may have fraudulently conveyed his property, intending thereby to hinder, delay and defeat the payment of his creditor.

2. A court of equity will refuse relief by injunction and receiver when the party seeking it has a full, adequate and complete remedy at law. High on Receivers, sec. 741; Carter Bros. v. Hightower, 79 Texas, 135; Uhl v. Dillon, 69 Am. Dec., 173; 20 Am. & Eng. Enc. Law, 30; Wiggins v. Armstrong, 2 Johns. Chan., 144; Phelps v. Foster, 18 Ill., 305; Bigelow v. Andress, 31 Ill., 322; High on Receivers, par. 406.

*R. F. Blair,* for appellees.—1. The property over which the court below appointed a receiver never in equity belonged to Mrs. H. Rhein, for the reason that she obtained it by false and fraudulent representations and fraudulent intent, and it therefore constitutes a trust fund, and she being insolvent and having fraudulently transferred said property to appellant as trustee, who is himself insolvent and irresponsible, and who is also charged with complicity in the fraud, makes this an extraordinary case, which authorized the court below to appoint a receiver to preserve said property and ratably distribute it, even at the suit of simple contract creditors. Cohen v. Meyers, 42 Ga., 46; Rosenberg v. Moore, 11 Md., 376; Johnson v. Farnum, 56 Ga., 144; Gregory v. Gregory, 1 Jones & S. (N. Y. Sup.), 1; Thompson v. Diffenderfer, 1 Md. Ch., 489; 3 Pom. Eq. Jur., sec. 1334 (sub. 6); Haggerty v. Pittman, 1 Paige, 298; Iron Works v. Agricultural Works, 2 Am. St. Rep., 28.

2. Courts of equity will aid the enforcement of liens obtained on said property by reason of writs of attachment having been levied there-

on at the suit of intervenors Armstrong, Cator & Co., et al.   Blum v. Schram, 58 Texas, 524;  Steinman v. Gahwiler, 30 S. W. Rep., 472.

NEILL, ASSOCIATE JUSTICE.—This appeal is from an interlocutory order appointing a receiver.   The statement of the case, made in appellant's brief, is adopted by the court.   It is as follows:

"On November 21, 1895, James G. Johnson & Co. filed a petition in the court below, against appellant Cahn, Mrs. H. Rhein, M. Rhein, and Henry Rhein, as defendants, for the appointment of a receiver for the property of Mrs. H. Rhein, which had theretofore been conveyed in trust to appellant Cahn.   The petition alleged, in substance, that Mrs. H. Rhein, by reason of certain false and fraudulent representations, which were fully set out in said petition, induced plaintiffs (appellees) to sell to her certain goods, wares and merchandise, an itemized account of which was attached to the petition;  that afterwards said Mrs. H. Rhein borrowed large sums of money, amounting to $3500, from F. Groos & Co. and D. Sullivan & Co., knowing and intending then and there to make a deed of trust thereafter conveying all of her property to a trustee for the fraudulent purpose of cheating and defrauding her creditors;  that the defendant Mrs. Rhein bought large quantities of goods, wares and merchandise on and prior to said date aforesaid, knowing that she would make a fraudulent conveyance, and intending at the time the goods were bought to make said deed of trust, for the purpose of cheating and defrauding her creditors;  that no part of said sum so borrowed was used in paying her debts;  that afterwards, to-wit: November 4, 1895, Mrs. Rhein did make a deed of trust, conveying all her property, which consisted of her stock of goods amounting to about $12,000, to S. Cahn, as trustee, to secure certain enumerated debts; that said deed of trust provided that after said preferred creditors had been paid off, the remainder of said property should be turned over to Mrs. Rhein;  that said Mrs. Rhein made said deed of trust for the fraudulent purpose of cheating, hindering, delaying and defrauding plaintiffs and her other creditors, and for the purpose of placing her goods beyond the reach of plaintiffs and other creditors;  that plaintiffs were informed and believed, and charged, that defendant Cahn was a minor, and could not make a contract;  that he is insolvent and irresponsible, and that if the goods remained in his hands, the property would be wasted and disposed of, and there would be nothing left to satisfy plaintiffs' claim, and the claims of other creditors;  that Cahn was inexperienced and incompetent to manage and dispose of the property, and if allowed to keep the same for the purpose of administering the trust, the property would be wasted and converted to his own use and benefit, and placed beyond the reach of plaintiffs and other creditors;  that said defendants, Cahn, Mrs. Rhein, M. Rhein and Henry Rhein, had entered into a conspiracy whereby they had each agreed to have said fraudulent deed of trust made to place said property in the hands of defendant Cahn, with the express understanding and for the fraudulent purpose of paying the preferred

claims, which amounted to only about $4926, and hindering, delaying, cheating, defrauding, and refusing to pay the claims of plaintiffs and all other creditors; that defendant Mrs. Rhein was insolvent, and that thereby plaintiffs had an equitable lien on her property for the amount of their debt, and had a right to have the property sold to the best advantage possible, so that the preferred debts might be paid off and the balance applied to plaintiffs' debt and the debts of all other creditors of Mrs. Rhein; that plaintiffs believed, and charged the fact to be, that defendants had secretly transferred a part of said stock of goods to defendant Mrs. Rhein's brothers, M. Rhein and Henry Rhein, with the intention and for the purpose of cheating and defrauding plaintiffs and all other creditors of defendant Mrs. Rhein, and placing said property beyond their reach, and for the fraudulent purpose of converting said property to their own use and benefit, without paying plaintiffs or leaving them anything with which to satisfy their debts; that in truth and in fact said defendants had secretly conveyed and transferred, as aforesaid, goods to the amount of about two thousand dollars, and that if defendants were allowed to remain in possession of the property the greater portion thereof would be transferred to defendant Mrs. Rhein's brother, M. Rhein and Henry Rhein, or to some other person, and sold, and the proceeds thereof converted to defendant's use and benefit; that plaintiffs had no adequate remedy at law, and without the relief prayed for would be irreparably injured. The petition purports to have been brought on behalf of plaintiffs and all other creditors of Mrs. Rhein who might choose to make themselves parties plaintiff to the suit.

"On the same day, and without notice to defendants, the judge of said court, in vacation, appointed William Boon receiver, and issued an injunction restraining defendants from disposing of any of the property.

"November 21, 1895, E. H. Stark & Co., Chas. Falkenberg, Perfection Cloak Co., T. Schlochtermeyer, Schilling Corset Co., Wachusetts Shirt Co., Rice, Stix & Co., and Heidenheim, Levy & Co., intervened in the cause and alleged that they were creditors of Mrs. Rhein, without, however, alleging the amount or nature of indebtedness, and asked to be made parties plaintiff in the cause, and adopted the petition of plaintiffs.

"On the same day, S. A. Rider Jewelry Co., D. B. Fisk & Co., Remy, Schmidt & Pleissner, Racine Trunk Co., the Mound City Duck & Rubber Co., the M. M. Secor Trunk Co., Swofford Bros. Dry Goods Co., the Gotham Garter Co., Jacob Adler & Co., and J. M. O'Donnell & Co. likewise intervened in the cause, alleging that they were creditors of Mrs. Rhein, but without alleging the amount or character of their indebtedness, and adopted the allegations of plaintiffs' original petition, and joined in the prayer for the appointment of a receiver.

"November 22, 1895, the appellant Cahn filed a motion questioning the legal sufficiency of plaintiffs' petition, and asking the judge to vacate and set aside the order appointing appellee Boon receiver of the property of Mrs. Rhein.

"November 25, 1895, the Desnoyers Shoe Co. likewise intervened in the cause, alleging that they were creditors of Mrs. Rhein to the extent of $284.28, but not averring the character of indebtedness, and joined in the prayer of plaintiffs for the appointment of a receiver.

"November 26, 1895, Armstrong, Cater & Co., Hargadine, McKittrick Dry Goods Co., Nonotuck Silk Co., Follmer, Clogg & Co., Chicago Rubber Clothing Co., and Gaier & Stroh Millinery Co. intervened in the cause, averring that they had an equitable interest in the suit; that each of said intervenors are attachment creditors of Mrs. Rhein; that on November 13, 1895, each of them sued out writs of attachment, and had levies made thereunder upon the stock of goods belonging to Mrs. Rhein for the following amounts, to-wit: Armstrong, Cater & Co., $727.58; Hargadine, McKittrick Dry Goods Co., $196.35; Nonotuck Silk Co., $74.25; Follmer, Clogg & Co., $295.80; Chicago Rubber Clothing Co., $231; and Gaier & Stroh Millinery Co., $205.56; and alleging further, that at the time the levies were made, the stock in the hands of S. Cahn, trustee, as they were informed and believed, was fully worth $10,000, and there was a large surplus of said stock over and above the amount necessary to pay the preferred creditors, to-wit: about the sum of $4500; that after said writs were levied and the goods seized were separated and removed from said stock, there were ample goods in value to pay all of the creditors preferred in said chattel mortgage given to Cahn as trustee, to-wit: about the sum of $9270, but that said trustee, by mismanagement and the fraudulent disposition of said stock, had so reduced the assets out of which said preferred debts were to be paid, as to make it possible, if not probable, that said goods seized under said writs of attachment might have to be returned to said stock, or the plaintiffs in said writs of attachments made to contribute to supply such deficits as might exist by reason of the preference lien, if one exists, in favor of the creditors named in said chattel mortgage; that the trustee allowed Mrs. Rhein to sell goods and receive cash, and direct and control the clerks in the store, and that under the directions of said Mrs. Rhein goods were packed in trunks and removed from the store rooms where such stock of goods were kept, for the purpose of keeping creditors from sequestering them under writs of sequestration; that to all intents and purposes, said Mrs. Rhein was in full control and possession of the stock of goods, and arrangements had been made to remove the entire stock of goods, had not the appointment of a receiver prevented its consummation, as is shown by the affidavit of William Boon and F. Greenwood, attached, and marked exhibit "A," and made a part of the petition of intervention; that the goods so seized under said writs of attachment are still in the hands of the officers; that the trustee Cahn has instituted suit in the forty-fifth judicial District Court against Campbell and McCloskey for making the levies under said writs of attachment, and it is necessary in order to protect said officers and to protect the liens secured in favor of these intervenors by virtue of said attachment levies, that the receiver be continued in

charge of said stock of goods, and that the same be disposed of under the order of the court, to the end that said trust may be honestly administered, and the proceeds derived from said stock of goods be properly applied to the payment of the just debts of said Rhein; and praying that the receivership be continued, and that the respective liens of said creditors secured by virtue of the levy of their attachment liens be respected, and for general relief.

"November 26, 1895, the motion of Cahn to set aside the order appointing the receiver having been heard and considered by the judge, it was overruled, to which said Cahn excepted, and gave notice of appeal."

*Opinion.*—The first question arising from the record and presented by appellant's assignment of error is, will a court of equity grant its aid by appointing a receiver in favor of mere general creditors, whose rights rest only in contract and are not reduced to judgment, and who have acquired no lien upon the property of the debtor? Upon the great weight of authority, we answer this question in the negative. High on Receivers (3 ed.), sec. 406, and authorities cited in note 1, p. 430; Wiggins v. Armstrong, 2 Johns. Ch. (Law. Ed.), 144, and authorities cited in note; 3 Pom. Eq., sec. 1415; 20 Am. & Eng. Encyc. Law, 30; Carter v. Hightower, 79 Texas, 135. We are aware that there are cases which support appellees' contention that where property is acquired by an insolvent through fraud, with the intention not to pay for it, and is fraudulently transferred by him to another party who is also insolvent, a court of equity will appoint a receiver in aid of a creditor at large who sues to recover the price of the property so fraudulently obtained from him; but it is thought that an examination of such authorities will show that they generally rest upon the authority of statutes.

The next question is, should a receiver be appointed or retained upon the application of attaching creditors who have seized under their writs a portion of their insolvent debtor's property in the hands of an insolvent trustee to whom the debtor conveyed all his property for the purpose of defrauding his creditors by an instrument which provides that when certain preferred debts are paid the balance of the property shall be returned to the debtor, when sufficient property is left by the attaching creditors in the hands of the trustee to pay the preferred claims, the receivership being sought for the purpose of taking the property left by the attaching creditors from the trustee to prevent him from squandering it, and having it administered by the court in such manner as to pay the preferred debts, in order to obviate the necessity of the preferred creditors going on the property attached for their debts, and thus save to the creditors asking for the receiver the property attached, as well as save them from liability on account of suing out the attachments? The existence of an adequate remedy at law is always a bar to the aid of equity granting a receivership. High on Receivers, sec. 741. Therefore, if the creditors claiming attachment liens who

intervened in this case asking for the retention of the receiver have such adequate remedy, the question should be answered in the negative. That they have such remedy is demonstrated by their pursuit of it in suing out their attachments. If they were rightfully sued out, it is to be presumed that they will obtain in their original suits every benefit given by the law to those who avail themselves of the right to attach the property of a debtor who has disposed of it with intent to defraud his creditors, and that they will not be held liable in damages for suing out the attachments. If the attachments were wrongfully sued out, they cannot look to equity to save them from the consequence of their wrong; and the trustee from whose possession the property was taken would be entitled to recover damages for its seizure and conversion. So, in neither event, are the attaching creditors entitled to have the order appointing the receiver continued.

The interlocutory order of the District Court appointing the receiver is here revoked, and annulled.

*Reversed and receiver discharged.*

Delivered January 15, 1896.