SOUTHERN RY. CO. v. TOWNSEND.

(Circuit Court of Appeals, Fifth Circuit. March 24, 1908. On Rehearing, April 20, 1908.)

No. 1,351.

1. RAILROADS—FORECLOSURE SALE—CONDITION REQUIRING PURCHASER TO PAY CLAIMS AGAINST RECEIVERS—CONSTRUCTION OF DECREE.

Where a court, in its decree confirming the sale of railroad property in a foreclosure suit, required the purchaser to assume and pay any indebtedness or liability incurred by the receivers which should be adjudged priority over the mortgage and should not be paid by the receivers from

funds in their hands, and reserved jurisdiction of the case for the enforcement of such requirement, a subsequent order, requiring all claimants to present their claims before the master before a date fixed, for action thereon by the court, and barring any not so presented, does not necessarily include claims which were then in suit before the same court.

2. SAME—RECEIVERS—GROUNDS FOR APPOINTMENT—ACTIONS PENDING AGAINST DISCHARGED RECEIVERS.

On a subsequent discharge of the receivers, such actions at law pending against them not having been disposed of, the court had power, under such reserved jurisdiction, to appoint a special receiver against whom such actions might be revived, and to defend the same and retake possession of sufficient property to satisfy any judgments recovered, if not paid by the purchaser.

Burns, District Judge, dissenting.

Appeal from the Circuit Court of the United States for the Northern District of Alabama.

Milton Humes and Paul Speake, for appellant.

Lawrence Cooper, for appellee.

Before McCORMICK, Circuit Judge, and NEWMAN and BURNS, District Judges.

NEWMAN, District Judge. On July 27, 1892, the Memphis & Charleston Railroad was placed in the hands of Charles M. McGhee and Henry Fink as receivers, in the Western district of Tennessee, and on July 29th thereafter, under an ancillary bill filed in the Northern division of the Northern district of Alabama, the same receivers were named for the property of the railroad company in Alabama. On April 15, 1897, a decree of foreclosure of the mortgage, which was one of the purposes of the bill, was entered in the Circuit Court for the Northern District of Alabama, following a decree of foreclosure in the Western district of Tennessee. Subsequently, in 1898, the property was sold, and the order confirming the sale contains this provision:

" * * * Ordered, adjudged, and decreed that the sale so reported by said special master, and the purchase of said railroad property, rights, assets, and franchises by said purchasers shall be, and the same is hereby, confirmed. And the court reserves full power from time to time to enter orders binding upon the said Southern Railway Company, as purchaser, requiring it and its successors and assigns to pay, satisfy, and discharge: * * * (b) Any unpaid indebtedness and obligations or liabilities which shall have been duly contracted or incurred by the receivers before delivery of possession of the property sold. * * * The court reserves full power, notwithstanding such conveyance and delivery of possession, to retake and resell the property this day confirmed, if the purchasers or their successors or assigns shall fail or neglect fully to complete such purchase and to comply with the orders of the court in respect to full payment and performance of such bid, or to pay into court, in accordance with such decree of sale, and supplemental decree, all such sums of money hereafter ordered by the court to be paid into its registry to discharge any and all such debts, liens, or claims as it may adjudge and decree should be paid out of the proceeds of sale in preference to the bonds secured by the mortgage of the said Memphis & Charleston Railroad Company herein foreclosed. * * * "

A deed was made to the purchaser of the property, the Southern Railway Company. The special master's deed conveying the property contained the following provisions:

"Witnesseth: * * * Upon the condition that, to the extent that the assets or the proceeds of the assets in the receiver's hands shall be insufficient the said Southern Railway Company and the said purchasers, its or their successors or assigns, shall pay, satisfy and discharge: * * * (b) Any unpaid indebtedness and obligation or liabilities which were duly contracted or incurred by the receivers before delivery of possession of the property sold. * * * And subject also to all the conditions and reservations of said deed of sale, * * * including the reservation to said Court of the power to retake and resell the premises conveyed or any parcel thereof, in case the said parties of the second party, their successors and assigns shall fail to pay any sum required by them under said decrees within the time specified in said decrees, respectively, after the entry of an order requiring such payment. * * * And the grantees, parties of the second part, agreeing to take the property so sold as aforesaid, subject to the performance by them, or by their successors or assigns, of all pending contracts in respect thereto, theretofore lawfully made by the receivers, the said grantees and their successors or assigns, having nevertheless the right, within ninety days after the completion of the sale and delivery of this deed, to elect whether or not to assume or adopt any lease or contract whether or not sold with the railroads and other property and franchises, neither they nor their successors or assigns to be held to have assumed any of said contracts or leases, which they shall not so elect to assume; provided, however, that upon publication by the said special master, when ordered by the court, as provided in said decree, of a notice requiring holders of any claims to present the same for allowance, and any such claim which shall not be so presented or filed within the period of six months after the first publication of such notice, shall not be enforceable against the property sold, or against the said grantees, their successors or assigns. * * *"

On March 16, 1898, an order was entered in this case, appointing a special master for the purpose of taking proof and reporting upon all claims which arose within the Northern district of Alabama, or which were held by parties residing within said district, against Charles M. McGhee and Henry Fink, receivers of the Memphis & Charleston Railroad Company, or against the said Memphis & Charleston Railroad Company under this decree. The order provided that:

"Said special master will make publication in some newspaper published in Huntsville, Alabama, once a week for three successive weeks, requiring all creditors or persons having claims which arose within the Northern district of Alabama or which are held by parties residing within said district either against the said receivers of the Memphis & Charleston Railroad Company or against the said Memphis & Charleston Railroad Company, claiming priority over the mortgage bonds, to file the same herein on or before September 24, 1898, for allowance and action thereon by this court, or the same shall be forever barred and denied any participation in the assets in the hands of said receivers. Said master will after the filing of any such claims, and after giving due notice of the same to the counsel representing such claims, and to the Southern Railway Company, take such proof as may be offered in support of, or in defense of such claim, and report thereon for the action of the court herein. Any claim against such receivers, or against the said Memphis & Charleston Railroad Company within the jurisdiction of this court not filed within the time required hereby shall be forever barred from all participation in the assets derived from the sale of the mortgaged property made in this case."

Subsequently the receivers were discharged, and their bonds canceled. At the time the order was made appointing the special master to take proof of claims, etc., on March 15, 1898, an action was pending in the same court—that is, in the Circuit Court of the United States for the Northern Division of the Northern District of Alabama—in favor

of Lemon Townsend against McGhee and Fink, receivers, for damages which he alleged he had sustained by reason of the negligence of the receivers, their agents, servants, and employés, while in the employment of said receivers.

Subsequently to the discharge of the receivers, Lemon Townsend brought a petition in the Circuit Court, setting out the fact of the appointment of McGhee and Fink as receivers in 1892, their operation of the property down to 1898, the order discharging them as receivers, and that the Southern Railway Company had become the purchaser, and that said company had taken the property by its purchase, subject to the unpaid obligations and liabilities incurred by the receivers. The petition sets out the fact of his injury in 1896, while in the employ of the receivers, by reason of the negligence of the receivers, their employés and agents, while they were in charge of the railroad property, and the fact that his suit had been brought on the 16th day of March, 1897, for the recovery of damages by reason of his injuries. It further alleges that the Southern Railway Company had failed and refused to pay him damages for the injuries so sustained, and that he is advised that he is wholly remediless in the premises, in the prosecution of his suit, unless by order of the court a receiver or receivers are appointed for the property theretofore belonging to the Memphis & Charleston Railroad Company, so that his suit can be maintained and prosecuted to judgment, and the amount due him ascertained as provided by law. He states the fact that other suits are pending in the Circuit Court of the United States for the Northern Division of the Northern District of Alabama, instituted against McGhee and Fink as receivers, and which remain undetermined. He prays that by the decretal order of the court a receiver be appointed for the properties of the Memphis & Charleston Railroad against whom his said suit may be prosecuted, under the orders of the court.

This petition was answered by the Southern Railway Company, which set up as a defense to the suit the order of the court requiring all claims to be filed by September 21, 1898, and that, although the special master appointed by the order had given the notice required, Lemon Townsend had failed to come in and make proof of his claim before the special master, and that he was barred of any right or claim against the Southern Railway Company by reason thereof.

Judge Jones entered a decree appointing a receiver; the decree of appointment being as follows:

"Upon the consideration of the petition of Lemon Townsend, filed in this cause on the 14th day of October, 1902, and the answer thereto of the Southern Railway Company and the record of proceedings in this cause, and also the record of proceedings in the other equity cause in this court of Farmers' Loan & Trust Company v. Memphis & Charleston Railroad Company and certified statements of E. E. Greenleaf and John B. Clough as special masters on file in this cause the court finds: (1) That the discharge of the receivers herein, Chas. M. McGhee and Henry Fink, was not intended as a final disposition of this cause, but that the court expressly retained jurisdiction to make such further orders therein as might from time to time be deemed proper. (2) That the purchaser of the property of the Memphis & Charleston Railroad Company, which was sold under decree of foreclosure in this cause, agreed, as a part of the consideration, and in addition to the sum bid at such foreclosure sale, to pay any unpaid indebtedness and obligations

or liabilities 'which shall have been duly contracted or incurred by the receivers before delivery of the possession of the property sold.' (3) That the purchaser of the property so sold at said foreclosure sale went into possession of said property, and accepted a deed thereto, under which the purchaser holds said property subject to the payment of the liabilities of said receivers, and by deed of indenture covenanted and agreed to pay and discharge said liabilities. (4) That in the decree confirming said sale, the court reserved full power, notwithstanding the conveyance and delivery of possession, to retake and sell the property if the purchaser or its successors should fail to comply with any of the orders in respect to the payment of the full consideration of said bid. (5) That said Chas. M. McGhee and Henry Fink, former receivers, left some liabilities incurred by them as such receivers in the operation of the Memphis & Charleston Railroad under the orders of this court, as to which actions were pending against them at the time of their discharge, which liabilities are still in litigation and remain unpaid. It further appears to the court that the petitioner Lemon Townsend and other petitioners similarly situated have pending actions at law which have not been disposed of by judgments in the law courts in which they are pending, and which were pending at the time of the discharge of said receivers, and have an equity if they obtain judgment against a receiver in this case, to subject said property of the Memphis & Charleston Railroad in the hands of the purchasers, to the payment of the debts and liabilities of the receivers incurred in the operation by said McGhee and Fink as receivers, and the further right to litigate the liability of the receivers to them by suit in a court of law.

"On consideration of the premises the court is of the opinion that a trust exists which might fail for want of a trustee, if no successor is appointed to said McGhee and Fink as receivers to fully execute said trust, and conserve the rights of the persons interested therein. It is therefore ordered, adjudged, and decreed that Edward E. Greenleaf, of Huntsville, Ala., be and he is hereby appointed receiver in this cause of the property, assets, and rights of the Memphis & Charleston Railroad Company, as successor to said McGhee and Fink, receivers, but without power, except as herein otherwise decreed, to interfere with or take possession of any of the property of the Memphis & Charleston Railroad which has heretofore been sold by decree of this court; and that said Greenleaf, as such receiver, shall defend all suits now pending against said McGhee and Fink as receivers concerning their liabilities growing out of their operation as receivers of the Memphis & Charleston Railroad, whenever such suits shall be properly revived against him. In that event he shall immediately notify the purchasers of the property of the Memphis & Charleston Railroad of the revivor of said suit against him, and notify the purchasers that they may appear and defend in his name, if they so desire. Whenever any judgment is rendered against said Greenleaf as receiver in any action or suit revived against him, and which was pending at the time of the discharge of said McGhee and Fink as receivers, whether the purchasers appear and defend on said action or suit or not, said Greenleaf, as receiver, shall report the facts to the court, and, after giving five days' notice to the purchasers, shall proceed by petition in this cause for a decree to sell so much of the property conveyed to the purchaser by the special master's deed of date February 26, 1898, as may be necessary to pay the judgment so rendered against said Greenleaf as receiver, and the costs and expenses incident thereto, including the costs and expenses of such petition."

It is from the granting of this decree that the present appeal is taken.

Was there such error in the action of Judge Jones in entering this decree as requires its reversal?

This was an administrative order made in connection with the foreclosure proceeding and receivership, looking to the protection of those having claims against the property which had been in the hands of the court and had been sold with the reservations shown in the order con-

firming the sale and in the deed to the purchasers. It was the method adopted by the court of enabling Lemon Townsend and others similarly situated to assert against the Southern Railway Company whatever claims they might have against that company. The court appointed the receiver with the limited powers stated in the decree of appointment, because, by the discharge of McGhee and Fink as receivers, Townsend and others had been left without any one against whom they might assert their claims. Other methods might have been adopted for reaching the same result, but that which was adopted does not seem to us to have violated any sound principle of equity, or any rule of equity practice. Townsend and others had no one, as the case stood (at least it was evidently so considered by the court) against whom they might assert their rights, and even the right to show that their claims were not barred by the order of March 15, 1898, providing for the filing of claims, etc.

The important question, coming to the merits of this matter, of course, is whether Townsend and others similarly situated were barred from asserting their rights against the purchasers of the property by reason of their failure to file their claims with the master as provided in the order of March 15, 1898. Their suits were pending at the time and in the court in which this order was entered, and we are not satisfied that the order could be held to embrace them. The order requires "all creditors or persons having claims, * * * claiming priority over the mortgage herein, to file the same herein on or before September 24, 1898, for allowance and action thereon by this court, or the same shall be forever barred," etc. The claims of Townsend and others were filed, as stated, in the court at the time this order was made, and we do not believe that the reasonable purpose and intent of this order was such as to require them to be filed again. Certainly counsel for Townsend and plaintiffs in other cases thus pending might well have considered the order as not applying to such cases, and the court might well hold we think, as it did, that the order limiting the time for filing claims did not necessarily require these claims to be noted before the master, and might do so without any invasion of the lawful rights of the purchasers of the property. The language of the order, it will be perceived, is that parties are required, as to demands claiming priority over the mortgage, "to file the same herein * * * for allowance and action thereon by this court." Even considering the language of the order specifically and technically, we do not see that it embraces these suits, and considered with reference to its purpose and intent, as has been stated, it is still more evident that they were not included. The purpose was to get before the court within a reasonable time all claims and demands which the purchasers would have to pay, if determined against them, and Townsend's claim, and that of the others in like situation, were then before the court.

The particular language of the deed made by the special master to the Southern Railway Company and others, which is relied upon here by the Southern Railway Company as a defense to this proceeding, concerning debts which, "shall not be enforceable against the property, sold, or against the said grantees, their successors or assigns" is : "Any such claims which shall not be so presented or filed within the period of

six months," etc. As stated, we think the claims of Townsend and others, being already of file in the court, there was no necessity for presenting them to the special master. The language used in the deed follows and conforms to the language used in the order confirming the sale, and the purchasers could not acquire any different or more enlarged rights or exemptions from liability by reason of the deed than they acquired by the order of confirmation.

Finding no error in the action of the court in entering the decree appointing Greenleaf receiver for the purposes stated, and with the restricted powers named therein, the decree is affirmed.

BURNS, District Judge (dissenting). The writer, with great deference to the view announced by the majority in sustaining the action of the lower court in the appointment of a receiver of the Memphis & Charleston Railroad to appear and defend cases pending on the law side of the docket in the Northern district of Alabama, is unable to concur, and the reasons therefor should be briefly stated.

The record proceedings are fully given in the statement of the case, from which it appears that plaintiff, Townsend, was injured December 8, 1896, while in the service of McGhee and Fink, receivers; that he filed suit against the said receivers on March 16, 1897; that the said receivers were finally discharged February 26, 1898, and thereafter, by order dated March 15, 1898, claimants were allowed six months in which to present claims growing out of the receivership to the special master, and claims not so presented were to be deemed barred. The case of Townsend appears to have continued upon the law side of the docket without progress until entry of order of date October 14, 1903 (based on petition of that date), appointing Greenleaf receiver. The situation obtains that 11 years after institution of the action at law, and 10 years after the final discharge of the receivers, it is deemed equitable that a receiver should appear and defend in order that a presumed or possible trust might be the more fully and equitably administered. There is no suggestion, or contention, that the purchaser, the Southern Railway Company, is at fault, or that it dissents from the terms and conditions imposed by the final decree of foreclosure. The plaintiff, Townsend, had more than 14 months after injury in which to prosecute his action against the original receivers, and his suit continued upon the docket more than 11 months before the receivership was closed. After the discharge of the receivers, a plea in abatement was filed setting up their discharge, and the record discloses that the plea has not been determined.

If it should appear that the plaintiff, notwithstanding the discharge of the receivers, had a clear, positive, and adequate remedy at law, it is difficult to understand why a court of equity should reach out its arm and by process of development employ other and unusual facilities in behalf of this sleeping litigant. It may be pertinent to depart from a statement of the general rule that equity will never grant relief where the complainant has an adequate remedy at law, to point out the legal remedy available to the plaintiff upon the discharge of the receivers. By amending his petition, setting up the discharge of the receivers, making the purchaser, the Southern Railway Company, a party defend-

ant, under the terms of the decree fixing the liability for the acts of the receivers, the plaintiff upon verdict, would have been entitled to his execution. This is the proper and usual course, not attended with difficulty, and doubtless familiar to practitioners in the state and federal courts. This statement should be conclusive of the proposition that plaintiff had and has an adequate remedy at law, and, more, he could have instituted and maintained his suit against the receivers, and upon their discharge, against the purchaser, in any state court of Alabama. Act Cong. March 3, 1887, c. 373, 24 Stat. 552, as amended by Act Aug. 13, 1888, c. 629, 25 Stat. 433 (U. S. Comp. St. 1901, p. 508).

In the case of Cahn v. Johnson, 12 Tex. Civ. App. 304, 33 S. W 1002, the court uses this language:

"The first question arising from the record, and presented by appellant's assignment of error. is: Will a court of equity grant its aid by appointing a receiver in favor of mere general creditors, whose rights rest only in contract and are not reduced to judgment, and who have acquired no lien upon the property of the debtor? Upon the great weight of authority, we answer this question in the negative." High, Rec'r (3d Ed.) § 406, and authorities cited in note 1, page 430; Wiggins v. Armstrong, 2 Johns. Ch. (N. Y.; Lawyers' Ed.) 144, and authorities cited in note; 3 Pom. Eq. Jur. § 1415; 20 Am. & Eng. Enc. Law, p. 30; Carter v. Hightower, 79 Tex. 135, 15 S. W. 223.

The existence of an adequate remedy at law is always a bar to the aid of equity granting a receivership. High on Receivers, par. 741. A receiver will not be appointed if any other remedy will afford ample protection. Etowah Min. & Mfg. Co. v. Wills Valley Min. & Mfg. Co.. 106 Ala. 492, 17 South. 522. To justify the appointment it must appear that the possession of defendant was obtained by fraud, or that the income is in danger of loss from neglect, waste, or misconduct. Gilbert v. Block, 51 Ill. App. 516. The power to appoint a receiver will never be exercised except upon a very grave necessity and upon a clear showing that the applicant has otherwise no adequate remedy, and is in danger of suffering irreparable loss. People's Investment Co. v. Crawford (Tex. Civ. App.) 45 S. W. 738; Cahn v. Johnson, 12 Tex. Civ. App. 304, 33 S. W. 1000; Bank v. Dunham, 18 Tex. Civ. App. 184, 44 S. W. 605; Land Co. v. Blevens, 12 Tex. Civ. App. 410, 34 S. W. 832; High on Receivers, Par. 3, 288, 289, 292; 20 Am. & Eng. Ency. Law, pp. 18–21; Bank v. Gage, 79 Ill. 207; Weatherly v. Water Co., 115 Ala. 156, 22 South. 142; Darragh v. Manufacturing Co., 78 Fed. 15, 23 C. C. A. 609.

The opinion in People's Investment Company v. Crawford, supra, concludes with this statement:

"The appellees' remedy without the aid of a receiver being adequate, it follows that the trial court erred in making the appointment, for which error the order of the court below appointing the receiver in this case is reversed. set aside, and the receivership vacated."

Before appointment is made, the court must be satisfied that a receiver is necessary to preserve the property, and thus adequately to protect the rights of the parties interested therein. Clark v. Ridgely, 1 Md. Ch. 70; Orphan Asylum Soc. v. McCartee, Hopk. Ch. (N. Y.) 429; Chase's Case, 1 Bland (Md.) 213, 17 Am. Dec. 277; Blondheim

v. Moore, 11 Md. 365; Walker v. House, 4 Md. Ch. 39; Bloodgood v. Clark, 4 Paige (N. Y.) 574; Lloyd v. Passingham, 16 Ves. Jr. 59–70.

If the plaintiff has an adequate remedy at law, then a receiver will not be appointed. This principle is but the application in receivership matters of a general principle in equity jurisprudence. Smith on Receivership, § 5, p. 14; Wooden v. Wooden, 3 N. J. Eq. 429; Mullen v. Jennings, 9 N. J. Eq. 192; Speights v. Peters, 9 Gill (Md.) 473; Rice v. Ry., 24 Minn. 464; Corey v. Long, 43 How. Prac. (N. Y.) 497; Parmly v. Bank, 3 Edw. Ch. (N. Y.) 395; Winkler v. Winkler, 40 Ill. 179; Coughron v. Swift, 18 Ill. 414.

The mere fact that the pursuit of the legal remedy is difficult, or that the remedy at law has been lost by the laches of the party entitled thereto, will not be sufficient to justify the appointment of a receiver. Alderson on Receivers, § 7, p. 11; Brown v. Chase, Walk. Ch. (Mich.) 43; Kean v. Colt, 5 N. J. Eq. 365; Fogarty v. Burke, 2 Dru. & War. 580; Gray v. Chaplin, 2 Russ. 126; Skinners Company v. Irish Society, 1 Myl. & Cr. 162; Drewry v. Barnes, 3 Russ. 94; Municipal Com'rs v. Lockhart, Ir. 3 Eq. 515.

It may be observed that the order of the court appointing Greenleaf receiver will defeat the very object which the plaintiff has in mind, in that the plaintiff and the receiver, being resident citizens of the state of Alabama, the Circuit Court will be without jurisdiction of the parties, and, aside from this, the statute of limitation will be as available to the receiver as to the purchaser.

## On Rehearing.

PER CURIAM. There is no new ground or argument advanced in this application for rehearing. The judges who sat on the original hearing gave the matter a very careful consideration, and only reached a conclusion in the case after going over the whole matter very carefully, and they all concur in the view that the petition of the appellant for a rehearing should be denied.

And it is so ordered.