Goodwin & McFarland v. A. G. Burton et al.

Decided March 26, 1909.

**1.—Venue—Privilege—Misjoinder—Parties.**

Where suit was on a note against the makers and the independent executrix of an endorser, and was brought in the county of the latter's residence, and the evidence and findings were that the note was transferred by the deceased endorser to the plaintiff in payment of, or as security for, a debt due him by deceased, the plaintiff became the legal holder and owner in either event, and could maintain a suit against the deceased endorser if he were living, and against his executrix after his death; and while the latter was not a necessary party she was a proper party, and pleas by the makers of the note of privilege to be sued in the county of their residence and of misjoinder of parties, were properly overruled.

**2.—Notes—Non est factum—Delivery—Innocent Purchaser.**

Where the makers signed the note and placed it in the possession of the payee who became the endorser, and under their plea of *non est factum* the evidence presented only the issue of delivery, they could not be heard to say, as against an innocent purchaser from the payee, that the note was never executed because not delivered to the payee, and the plea was properly overruled.

**3.—Delivery—Possession by Payee—Innocent Purchaser.**

The makers of a note in placing it in the payee's safe or in a safe under his control, put the payee in possession; and an agreement between the parties that the payee should hold the note until an examination of the books of the business purchased by the makers should determine what amount, if any, they should be credited with, could not affect one who purchased the note from the payee without notice of the agreement.

**4.—Assignment of Error.**

An assignment of error complaining of the verdict on the ground that it is contrary to the evidence is too general to require consideration.

Appeal from the District Court of Anderson County. Tried below before Hon. B. H. Gardner.

*G. R. Whitley* and *Jno. F. Weeks,* for appellants.—In an action on a note payable to A and delivered to B for collection, with instructions to apply the funds when collected to A's indebtedness, said note having been endorsed in blank, and after A's death B could not make the administrator of A a party defendant and give jurisdiction to the court over the persons of the makers of said note at a place other than their residence. Article 1194, Sayles' Statute; Blum v. Root & Dow, 2 Texas App. Civ. Cases, 98; United States F. & G. Co. v. Fossati, 97 Texas, 503; Holloway v. Blum, 60 Texas, 625; Chaison v. Beaucham, 12 Texas Civ. App., 112.

The court erred in overruling the defendants' (Goodwin and McFarland) plea of misjoinder of parties because the uncontroverted facts were to the effect that the plaintiff, A. G. Burton, did not own the notes, and that he was not authorized by Pickens to sue on them, but upon the other hand they were the property of Pickens at the time of his death, and Burton held them only for collection and was not authorized to sue. United States F. & G. Co. v. Fossati, 97 Texas, 503; Christi v. Gunter, 26 Texas, 700; Holloway v. Blum, 60 Texas, 625.

*N. B. Morris* and *Thos. B. Greenwood,* for appellees.

PLEASANTS, CHIEF JUSTICE.—This suit was brought by appellee Burton against A. A. Goodwin and E. J. McFarland, makers, and against Mrs. Mollie E. Pickens, independent executrix of the last will of S. N. Pickens, deceased, who was endorser, of two notes for $493.27 each, executed January 30, 1907, and payable to S. N. Pickens or order six and twelve months after date respectively, with interest at ten percent per annum and ten percent attorney's fees in event default should be made in the payment of said notes at maturity. The petition alleged the execution and delivery of the notes, their transfer by S. N. Pickens to plaintiff for a valuable consideration on June 19, 1907, without notice to plaintiff of any defense which the makers might have to same, and the failure and refusal of defendants to pay same though often requested so to do. Recovery was asked against all of the defendants for the amount of the principal and interest due upon said notes and the ten percent attorney's fees as therein provided.

The defendants Goodwin and McFarland filed plea of privilege to be sued in Palo Pinto County where they both reside, and in connection with and support of said plea of privilege they also filed the following plea: "Now comes A. A. Goodwin and E. J. McFarland, two of the defendants in the above styled and numbered cause, and say that the plaintiff can not prosecute this suit against these defendants, viz.; Mrs. Mollie J. Pickens, executrix of S. N. Pickens, deceased, and A. B. Goodwin and E. J. McFarland, jointly, because there is not, nor can there be, any joint cause of action existing against them; that if in this cause there could be a cause of action at all, it would first be against Mrs. Mollie J. Pickens, the administratrix of the estate of S. N. Pickens, deceased, and that no suit could be brought against her at this time because, as these defendants are informed and verily believe and now charge the fact to be, the pretended claim against her

by the endorsement of the said S. N. Pickens, deceased, of the note herein sued on, which has not in due form been presented to her as said executrix and that the same has not been refused by her, and if the same is not a binding obligation against the deceased S. N. Pickens, then this court could have no jurisdiction against her as administratrix of such estate, and that the joinder of these defendants, together with the said Mrs. Mollie J. Pickens, administratrix, is a misjoinder of defendants for the sole purpose of giving this court jurisdiction against these defendants. That if such note ever existed it was not a binding obligation against these defendants, then they say that they are not properly joined as defendants with the said Mrs. Mollie J. Pickens, for the reasons above stated, wherefore they pray the court.

"A. A. Goodwin,
"E. J. McFarland, per A. A. G.

"Now comes A. A. Goodwin, for himself and his partner, E. J. McFarland, and says on oath that the above and foregoing allegations are true as to the best of his knowledge and belief.

"A. A. Goodwin.

"Sworn to and subscribed before me this 26th day of November, 1907.                                                "J. F. Brown,
"[L. S.]                        "Clerk, District Court, Anderson County."

Subject to these pleas said defendants filed an answer containing a general exception, and several special exceptions to plaintiff's petition, the nature of which is unnecessary to set out, and also the following plea:

"And the defendants, A. A. Goodwin and E. J. McFarland, say that the note sued on by plaintiffs in this cause never was in fact executed and delivered by them to the said S. N. Pickens or any other person, and that the said note was in fact never delivered to any person for any purpose whatsoever, and that the execution of same was made without defendants' knowledge or consent, and that they nor either of them have never at any time since ratified or confirmed the same. Wherefore, the defendants pray that said note or instrument in writing is not their acts or deed, and of this he puts himself upon the country; and for further plea in this behalf the defendants, A. A. Goodwin and E. J. McFarland, deny each and every allegation in plaintiff's petition and say that the same is unture and demand strict proof of the same."

This plea was verified by the affidavit of defendant Goodwin. They further answer, in substance, that the notes sued on were executed by said defendants in payment of the purchase money of an insurance business in the City of Mineral Wells sold to them by S. N. Pickens on or about the 20th day of January, 1907; that they agreed to pay the said S. N. Pickens the sum of $2,500 for said business, provided the premiums upon insurance then in force upon the books of said Pickens amounted to the sum of $2,500 per annum; that they paid the said Pickens the sum of $1,100 in cash and signed the two notes before mentioned with the distinct understanding that they were to

remain in the safe in said insurance office until an examination of the books of said business by an expert would show that said annual premiums amounted to the sum of $2,500, and were not to be delivered to, or become the property of, said Pickens unless said examination of the books developed the fact before stated; that after the examination of said books by an expert examiner began said Pickens, knowing that the examination would show that the premiums on the policies in force on said books would not amount to $2,500, and having a key to the safe in which the notes were deposited, took them from said safe without the knowledge of defendants, and said notes were never delivered by these defendants, but were stolen from said safe as aforesaid; that the examination of said books by the expert examiner demonstrated that the premiums on the policies in force therein did not amount to more than $600 per annum, and that upon ascertaining the facts that said notes had been stolen and that the amount of said premiums was less than $2,500, these defendants, on June 12, 1907, before the pretended purchase of the notes by plaintiff, by an advertisement in the Daily Index, a daily paper published in the city of Mineral Wells, advised the public of the facts in regard to said notes and warned every one from purchasing same; that the plaintiff was in Mineral Wells at the time said notice was published and was a reader of said paper and saw and read said notice, or by the use of ordinary care could have seen the same before he acquired said notes, and is therefore charged with notice of the fact that the notes were void for want of consideration. It is further specially denied that the plaintiff purchased said notes, or that the same were transferred to him as collateral security for any indebtedness due him from said Pickens. The answer concludes with a prayer that plaintiff take nothing against said defendants and that they recover against their co-defendant, Mrs. Mollie J. Pickens, executrix, the sum of $1,100.

The defendant Mrs. Pickens answered by general denial of both the allegations of the petition and the answer of her co-defendants, and specially answering the prayer of said defendants' answer for judgment against her for the $1,100 paid by them to her testator as part of the purchase money for said insurance business, she avers that if the facts stated in the answer of said defendants are true that said defendants, "with full knowledge of all material facts elected to affirm and did affirm and ratify the purchase by them of the insurance business of S. N. Pickens & Company, and their said promissory notes, and the delivery of same to S. N. Pickens, and they can not now successfully defeat payment of same after having so ratified their contract with S. N. Pickens & Company, and the delivery of said notes to him, and after having appropriated all the benefits of their purchase from S. N. Pickens & Company, and this she is ready to verify, wherefore she prays judgment, etc."

Upon the trial in the court below the case was submitted to a jury upon special issues, and upon the return of verdict judgment was rendered in favor of plaintiff in accordance with the prayer of his petition, and against defendants Goodwin and McFarland on their cross-action against Mrs. Pickens. From this judgment the defendants Goodwin and McFarland have appealed.

The special issues submitted to the jury and the findings of fact thereon are as follows:

"Question first: Did Goodwin and McFarland execute the notes sued on? To the first question we answer Yes.

"Question second: Were the notes sued on delivered to S. N. Pickens by Goodwin and McFarland, or by their authority? To the second question we answer Yes.

"Question third: Did Pickens, without the knowledge or consent or authority of Goodwin or McFarland, abstract the notes sued on from their possession? To the third question we answer No.

"Question fourth: Were the notes sued on ever transferred by Pickens to Burton, and if so, when and for what purpose? To the fourth question we answer Yes. June 19, 1907. For indebtedness.

"Question fifth: At the time Burton acquired possession of the notes from Pickens, if he acquired them, did he have any notice that Goodwin and McFarland had repudiated the payment of the notes or any part thereof? To the fifth question we answer No.

"Question sixth: Did Burton receive the notes sued on for collection as the agent of Pickens? To the sixth question we answer No.

"Question seventh: Did Burton receive the notes sued on as a creditor of Pickens? To the seventh question we answer Yes.

"Question eight: Were the notes sued on with or without consideration? To the eighth question we answer: With consideration."

Appellants' first, second and third assignments of error complain of the action of the trial court in not sustaining their plea of privilege and their plea questioning the right of appellee to maintain this suit against Mrs. Pickens. If Mrs. Pickens was a proper party to the suit it is not contended that appellants' plea of privilege should have been sustained, but it is earnestly insisted that the evidence shows that appellee did not purchase the notes from S. N. Pickens, but only held them for collection for Pickens' account, and therefore he has no claim against Mrs. Pickens and she was only made a party defendant for the purpose of conferring jurisdiction upon the trial court over the nonresidents, appellants herein.

The findings of the jury in answer to the fourth, sixth and seventh questions, before set out, are to the effect that the notes were transferred by Pickens to appellee in payment of or as security for an indebtedness due him by Pickens, and that appellee did not hold the notes for collection as agent of Pickens. These findings are supported by the evidence. The appellee testified that Pickens owed him on June 19, 1907, a sum of money largely in excess of the amount of the notes, and that on said date "He endorsed them (the notes) and said he wanted to turn them over to me. I was to collect them and take them to Mr. Royal and credit his account with them." He further testified that he never heard of any claim on the part of the appellants that they had a defense to the notes until June 21st, after he "had bought the notes." He also states: "At the time the notes were transferred to me I did not pay him (Pickens) a cent. He was considerably in my debt and had been for a long time. I did not receipt for them. I took them for collection. I took them as my notes.

He said, 'Here, take these.' I expected to give him credit for them when they were paid."

Mrs. Pickens testified: "I have never claimed possession of these notes. I knew that Mr. Pickens had transferred them to Burton and they were his property."

Mr. Royal, cashier of the Royal National Bank of Palestine, testified that appellee kept an account at his bank, and that under instructions from appellee he paid insurance premiums due by Pickens and had charged the amount so paid to appellee's account, and that the sums so paid by him that were charged to appellee's account amounted to over $1,800, and at the time these notes were endorsed to appellee the account at the bank showed that Pickens owed appellee about $1,200.

Appellee also testified that, "If the court were to hold that these notes were not good and were not a charge against these parties, I would still be in the same attitude towards the estate as if I were to receive the money. I would still have a claim against the estate as if I had never had the notes. I never gave him credit for them."

This evidence shows that appellee is the legal holder and owner of the notes, and it matters not whether he holds them as security for the indebtedness due him by Pickens or took them in payment of such indebtedness, in either case he could maintain a suit thereon against Pickens as endorser if he were living, and can maintain this suit against Mrs. Pickens as independent executrix of said endorser. While Mrs. Pickens was not a necessary party she is a proper party to the suit, and such being the case, the fact that the other defendants reside in Palo Pinto County would not entitle them to require the suit to be brought in that county, and the pleas of privilege and misjoinder of parties were properly overruled.

The fourth assignment complains of the ruling of the court in admitting the notes in evidence over the objection of the appellants that their was no proof of their execution and that defendants had filed plea of *non est factum*. The appellant Goodwin testified that he and McFarland signed the notes, but that the rate of interest and the place of payment were inserted in the notes after they were signed. There is no issue raised by the evidence as to the actual signing of the notes by the appellants, the only issue being as to whether they were delivered to Pickens. Goodwin testified that they were placed in the safe in the office and it was understood that they were not to be delivered to Pickens until the business was checked up; that Pickens had papers in this safe and had access thereto, and that witness did not know the notes had been taken therefrom until the 14th or 15th of June, 1907. He further testified that the examination of the books had shown that the business was not what it had been guaranteed to be by Pickens, and that under their agreement Pickens was not entitled to the notes.

A. M. Blount testified for the defendants that he was present at the time the trade between Pickens and appellants was made, and that the amount of the consideration was to be determined by the amount that the insurance business would receive from policy renewals during the year succeeding the date of the sale, such amount to be

determined by the amount of premiums on the policies carried by the business at the time of the trade and shown by the books to be then in force. He further testified that the notes were executed and placed in the safe in the office with the understanding that if the checking of the books showed the business to be less than the consideration for the sale the notes were to be credited with the difference. He further testified that the understanding was that the notes were not to bear interest and that the place of payment was not named. He investigated the books, and the amount of premiums on the policies carried on said books was about $1,000 less than the amount appellants had agreed to pay for the business, which difference would more than cancel the notes. At the time the notes were signed and placed in the safe, and for several weeks thereafter, Blount was in the employ of Pickens and had charge of the office and safe. Pickens had the only key to the box in the safe in which the notes were placed. The appellee and the appellant Goodwin and several other witnesses testified that Pickens was a man of highest integrity and had the confidence of all who knew him.

The written contract of sale contained no guarantee of any kind. When the notes were endorsed and delivered to appellee they were taken by Pickens from a bank in Mineral Wells where he kept his papers. The undisputed evidence shows that if there was any guarantee as to the value of the business, as claimed by appellants, or any limitation upon Pickens' right to dispose of the notes, or any change made in the interest rate specified in the notes, appellee had no notice thereof at the time he purchased. We think this evidence sustains the finding of the jury that the notes were executed—that is, signed and delivered—by appellants. If it be conceded that the evidence shows that the notes were to be held by Pickens until the examination of the books should determine what amount, if any, they should be credited with, this agreement would not affect appellee, who purchased from Pickens without notice of the agreement. In placing the notes in Pickens' safe, or in a safe under his control, appellants put them in his possession, and can not be heard to say, as against an innocent purchaser, that the notes were never executed because not delivered to the payee.

The sixth assignment complains of the judgment giving appellee ten percent interest on the notes. What we have said under the foregoing assignment disposes of this assignment, which is also overruled.

The seventh assignment, which complains of the verdict on the ground that it is contrary to the evidence, is too general to require consideration. We are of opinion that the judgment of the court below should be affirmed, and it has been so ordered.

*Affirmed.*