CITY NATIONAL BANK OF DALLAS v. DUNHAM, BUCKLEY & CO. ET AL.

Delivered January 22, 1898.

1. Practice in Equity—Sworn Allegation as Evidence.

A sworn allegation in plaintiff's bill for an injunction to restrain the disposition of property by defendant can not be considered as evidence to support plaintiff's case, where the allegation is denied in the sworn answer and the case is not tried on the petition and answers, but there is a regular hearing, the parties introducing their witnesses, and their oral testimony being taken in court.

2. Receiver—Grounds for Appointment.

An action to restrain trustees to whom property has been conveyed by an insolvent debtor for the benefit of certain creditors from disposing of property, and for the appointment of a receiver, will not lie at the instance of other creditors who have, in another action, sued the debtor and garnisheed the trustees, when it does not appear that the trustees are insolvent, or that the property may be dissipated or materially injured.

APPEAL from Dallas. Tried below before Hon. W. J. J. SMITH.

*McCormick & Spence*, for appellants.

*Sam A. Leake, Frank Reeves*, and *J. H. Pickrell*, for appellees.

BOOKHOUT, ASSOCIATE JUSTICE.—The statement of the case contained in appellant's brief is substantially correct, and is adopted. On June 7, 1897, Dunham, Buckley & Co., John Pullman & Co., and Arnold, Constable & Co. filed their joint petition against I. Goldsmith & Co., E. M. Reardon, and R. Liebman, and on June 9, 1897, they filed their first amended original petition against the same defendants, and alleged that petitioners were creditors of I. Goldsmith & Co., had instituted their respective suits against I. Goldsmith & Co., and had caused writs of garnishment to issue and be served on R. Liebman and E. M. Reardon as garnishees. That prior to the institution of their respective suits I. Goldsmith & Co. had executed a deed of trust on certain personal property and real estate for the purpose of securing certain alleged creditors of said I. Goldsmith & Co., in which instrument said E. M. Reardon and R. Liebman were made trustees, and that R. Liebman and E. M. Reardon, as trustees, had taken possession of said personal property, and were then in possession thereof. That I. Goldsmith & Co. had for some years been merchants and doing business at Dallas, and were indebted to the petitioners for goods, wares, and merchandise sold them. That the amount of property conveyed by I. Goldsmith & Co. to the trustees amounted to about $30,000. That plaintiffs were informed and believed that said trust deed was invalid, because it empowered the trustees to sell the stock of goods in lots as said trustees might see fit, at public and private sale, it being left to the discretion of said trustees to sell at such times and in such quantities as they might desire, etc. That the City National Bank of Dallas was one of the creditors provided for in said deed of trust to the amount of $8000, and that plaintiffs had reason to

believe and did believe said claim to be in part unreal and fictitious, and incurred with the agreement and understanding between the City National Bank and I. Goldsmith & Co. that a chattel mortgage should be given to secure the same, and that the bank then knew that I. Goldsmith & Co. intended to attempt a fraud upon their creditors. That Goldsmith & Co. had also entered into a fraudulent arrangement with H. B. Claflin & Co., one of the creditors in said trust deed. That the defendant Reardon had been an officer of the City National Bank, and as such had conducted negotiations between the bank and Goldsmith & Co., and that Goldsmith & Co. were hopelessly insolvent. That another creditor secured in the trust deed, Mrs. C. O'Bright, was the mother-in-law of I. Goldsmith, defendant; that petitioners did not know whether said claim was just or not, but did not believe that it was. That petitioners were informed and believed that said trustees had no property subject to execution, and were insolvent, and petitioners prayed for an injunction against the trustees' selling or disposing of any of said property, and for a receiver, and for general relief.

On June 9, 1897, A. H. Belo & Co. filed an intervention, substantially adopting the allegations of the plaintiffs' petition, which intervention on the part of A. H. Belo & Co. was sworn to.

On June 10, 1897, Botany Worsted Mills filed their first amended original petition of intervention, substantially adopting the allegations of plaintiffs' petition. The intervention of Botany Worsted Mills was sworn to.

On June 9, 1897, William Meyer & Co. filed their intervention, substantially adopting the allegations of plaintiffs' petition.

On June 9, 1897, appellant (City National Bank of Dallas) filed its petition in intervention, alleging that it was one of the beneficiaries in the trust deed, and that the defendants I. Goldsmith & Co. were justly indebted to it in the sum of $8000, and that the said sum had been incurred for advances of money made to I. Goldsmith & Co. by appellant in the usual course of its banking business; that I. Goldsmith & Co. had been customers of the bank for a great many years; that the bank had no notice when the said money was loaned that Goldsmith & Co. were insolvent or in an embarrassed condition; that appellant had accepted under the trust deed in good faith, and thereby become a mortgagee of the property in the hands of the trustees. Appellant also denied all allegations of collusion, fraudulent combinations and conspiracy with the defendants, and set forth that the appointment of a receiver would entail costs and delay and would work irreparable injury to the intervener, in that the trust deed did not provide for the payment of interest for intervener's claim; and that I. Goldsmith & Co. were insolvent, and that intervener would not be able to collect interest from them. Appellant prayed that the application for a receiver be denied, and that the trustees be permitted to execute the trust deed, and the restraining order be dissolved. Said intervention on the part of the City National Bank was verified.

The defendants Goldsmith and Hahlo, composing the firm of I. Goldsmith & Co., filed their answer on June 9, under oath, denying all fraudulent intent on their part in the execution of the trust deed, and all collusion as charged in the bill.

The defendants Reardon and Liebman filed their answer on June 9, 1897, under oath, denying any collusion or conspiracy, and denying that they were insolvent, and praying that the application for a receiver be refused, and the injunction dissolved.

On June 15, 1897, the application for the appointment of a receiver came on to be heard, and John H. Gaston was appointed receiver, from which order appointing a receiver appellants prosecute this appeal.

The court below filed lengthy conclusions of fact, and also its conclusions of law. The conclusions of law we think sufficiently indicate the facts found by the court, and are as follows:

"The plaintiffs herein having acquired a lien by the service of their writs of garnishment upon Reardon and Liebman, the trustees, upon all the property embraced in said deed of trust, the court is of the opinion that the application for a receiver should be granted, for the following reasons:

"1. Because of the financial condition of said trustees.

"2. Because said deed was executed by I. Goldsmith & Co. in pursuance of a fraudulent purpose on their part prior thereto, to convert their property into money for the purpose of placing it beyond the reach of their creditors, and to convey in trust such of their property as they did not succeed in converting into money for the benefit of their creditors named in said deed of trust, and it appears that nearly all of said creditors, with full knowledge of the fraudulent purpose and intention of said I. Goldsmith & Co. in converting into money their goods, to place the same beyond the reach of their other creditors, had consented while the said I. Goldsmith & Co. were so fraudulently disposing of their property to become the beneficiaries in said deed of trust that was to be afterwards executed.

"3. Because the said deed of trust is void, for the following reasons: (1) Because the time and mode of its performance is indefinite, in this—the time and mode of the sale of the personal property is left to the unlimited discretion of the trustees; (2) because the real estate can not be sold until all the personal property is disposed of; (3) because in the case of the inability or refusal of the trustees to sell said land, the sale thereof then depends upon the consent of the majority of the creditors whose claims remain unpaid at the time of such refusal, or at the time of the inability of the trustees to act.

"4. J. J. Koppel did not have authority from J. Kahn to accept said deed in trust for him; and the court being of the opinion that the claims of the City National Bank, V. H. Hexter, C. Obright, E. Blum, Isaac Hirsch & Son, and M. Momburger should be held void as to plaintiffs herein, and the court is of the opinion that in case said trustees should

sell the property embraced in said deed, that there is danger of the proceeds of said sale being lost to plaintiffs."

We have carefully examined the record and reached a different conclusion, both on the facts and law, than that reached by the trial court. The court finds that the trustees named in the deed of trust are insolvent. There is no evidence in the record showing the insolvency of the trustee Reardon. The petition alleges his insolvency on information and belief, and the petition is supported by affidavit. This is specifically denied in the sworn answer of the trustees. This is a stand-off, and leaves the petition as though it were not sworn to. Beach on Receivers, sec. 48; High on Receivers, sec. 24. Besides, the case was not tried on the petition and answer, but there was a regular hearing, the parties introducing their witnesses and their oral testimony was taken in court. In such a case the allegations in the petition will not be considered as evidence to support plaintiff's case. The record does not contain any evidence whatever tending to show insolvency on the part of Reardon.

In reference to the trustee Liebman, he testified that he owned 153 shares of stock in the Texas Paper Company, and that the stock was worth $200 per share, and that his stock was really worth $30,000. He also stated that he owned 100 shares of stock in a paper company in St. Louis, which were worth $7000. There was no evidence contradicting these statements. The witness did testify that he only paid taxes on his homestead, and that he had no property subject to execution in Dallas. He seems to have been under the impression that stock in an incorporated company could not be reached by execution. He further testified that he did not owe anything. We conclude that the record does not show that the trustees are insolvent.

The evidence fails to show that there is any danger of the property being dissipated. The evidence shows that it was the intention of the trustees to convert the property into money and to receive competitive bids for it with the view of realizing as much as possible for the property. One of the trustees testified, substantially, that he did not intend to pay out the money until the garnishment suits were disposed of. The other trustee says that he only intends to pay that which is legal. We do not think there is sufficient evidence in the record upon which a conclusion can be reached that the property is liable to be injured or dissipated. The evidence fails to show any collusion between the trustees and any other party or parties to make a fraudulent disposition of the property.

Counsel for appellees invoke the statute of this State, article 1465, Sayles' Civil Statutes, as authority for the appointment of a receiver in this case. Subdivision 1 of this statute provides that a receiver may be appointed "in an action by a vendee to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to his claim, or between partners or others jointly owning or interested in any property or fund, or on the application of the plaintiff or any party whose

right to or interest in any property or fund or the proceeds thereof is probable, and where it is shown the property or fund is in danger of being lost, removed, or materially injured." We think in each of the cases set forth in the above clause of the statute as the basis for the appointment of a receiver, it must be shown "that the property or fund is in danger of being lost, removed, or materially injured." This statute is only declaratory of the equitable doctrine that a receiver will be appointed when it is necessary to save the subject of litigation from material injury or preserve it from threatened destruction. Beach on Receivers, sec. 48; High on Receivers, sec. 11.

As already stated, we do not think the record shows that the property is in danger of being lost, removed, or materially injured.

It is unnecessary, and we think improper, at this time to review the evidence upon the other questions raised in the record. These questions may be litigated in the garnishment suits, and any expression from us now might be prejudicial to their determination upon the trial of the cases. For the determination of these questions the parties have an adequate remedy at law, which is sufficient ground for the court's refusal to appoint a receiver. High on Receivers, secs. 10, 592; Beach on Receivers, sec. 48; Cahn v. Johnson, 33 S. W. Rep., 1000.

We are of the opinion that the receiver was improvidently appointed in this case, and the order of the court below appointing him is annulled and the receiver discharged.

*Judgment accordingly.*