## SANBORN v. NELSON.

(Court of Civil Appeals of Texas. Jan. 21, 1911. On Motion for Rehearing, Feb. 25, 1911.)

1. PARTNERSHIP (§ 325*) — RECEIVERS — GROUNDS FOR APPOINTMENT—LOSS OF PROPERTY—AFFIDAVITS.

On an application for appointment of a receiver between partners in transactions concerning land and other deals, the showing of applicant in view of the counter affidavits *held* insufficient to show that the property or funds were in danger of being lost, removed, or materially injured, as required by Rev. St. 1895, art. 1465.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 757–767; Dec. Dig. § 325.*]

On Motion for Rehearing.

2. PARTNERSHIP (§ 325*) — RECEIVERS — APPOINTMENT — ORDER — PARTIAL VALIDITY—EFFECT.

Where, under Rev. St. 1895, art. 1465, authorizing the appointment of receivers between partners and others jointly interested in property or funds, an order is made appointing a receiver, that an inconsiderable portion of the property is personal property to which applicant had a right to a receiver would not sustain the order, the showing as to the real estate comprising the greater portion of the property involved being insufficient to sustain the order.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 757–767; Dec. Dig. § 325.*]

Appeal from District Court, Potter County; J. N. Browning, Judge.

Action by O. H. Nelson against H. B. Sanborn. From an order appointing a receiver, defendant appeals. Reversed, and receivership vacated.

Gustavus, Bowman & Jackson, W. O. Davis, and Stephens & Miller, for appellant. Madden, Trulove & Kimbrough, for appellee.

CONNER, C. J. This appeal is from an order of the honorable J. N. Browning, judge of the Forty-Seventh district, appointing a receiver upon the petition of appellee. Omitting much detail and transmutation in title not deemed necessary to an understanding of our conclusion, appellee's petition exhibits transactions leading to the joint acquisition by appellant and appellee of some 135,736 acres of land known as the "Bravo Ranch," together with several thousand dollars worth of personal property consisting of horses, cattle, and ranch appurtenances, all situated in the counties of Hartley and Oldham, and a later partition of the same whereby appellant became the sole owner of a specified three-fourths and appellee sole owner of the remaining one-fourth, consisting of certain designated sections of the land. It was alleged that the ranch had been bought with a view of subdividing it and of reselling the same in smaller quantities and at a profit, in the meantime the ranch to be operated at the greatest advantage; that in the acquisition of the ranch and in its operation until the partition mentioned, including a resale of some nine thousand acres for cash and notes, appellant and appellee were partners and doing business as such; that the notes and personal property had never been divided, but was yet, so far as unwasted, wholly retained by appellant. It further appears that at the time of the partition appellee was indebted to appellant in a large sum, viz., about $30,000, for moneys advanced in behalf of appellee in part payment for his one-fourth interest, and that appellant had incurred a liability for a further large sum, viz., some $80,000, upon appellee's paper due the vendors. Appellee, being unable to pay or secure these several sums, and at appellant's insistence that he be paid and secured, joined appellant in a further agreement dated June 1, 1907, placing in escrow with J. L. Smith of Amarillo, Tex., a deed termed a "quitclaim deed," by which appellee in terms conveyed to appellant the fee-simple title to the one-fourth, or 31,493 acres, of land set apart to appellee in the partition, which deed, the conditions of its deposit not having been complied with on appellee's part, was delivered by said J. L. Smith to appellant in accordance with the terms of deposit on the ——— day of November, 1907.

This agreement of June 1, 1907, after reciting the indebtedness and obligation of appellee to pay appellant, contained among other things the following:

"(a) Should the said O. H. Nelson at any time before Oct. 1st, 1907, pay to the said H. B. Sanborn the full amount, principal and interest, owing to him by said O. H. Nelson and for which he is surety or in any wise liable, or pay such indebtedness and indemnify and protect the said H. B. Sanborn, then said deed shall be returned to the said O. H. Nelson, and may be destroyed and shall be of no force and effect.

"(b) Should the said O. H. Nelson fail to pay his indebtedness to H. B. Sanborn by Oct. 1st, 1907, and fail to have him released from all of the obligations of the said O. H. Nelson for which he is surety or in any way liable, or fail to pay said indebtedness and indemnify the said H. B. Sanborn against all obligations for which he is liable satisfactorily to the said H. B. Sanborn, or fail to do either or any of said acts, then said deed shall be delivered by the said J. L. Smith to H. B. Sanborn and shall be effective, operative, and binding, as a deed of conveyance, and the said H. B. Sanborn may have said deed recorded.

"Fourth. Should the said O. H. Nelson fail to pay his indebtedness to the said H. B. Sanborn by Oct. 1st, 1907, and have him released from or indemnified against the obligations of the said O. H. Nelson for which he is or may be liable, the fee-simple title to said lands embraced in said deed from the said Nelson to the said Sanborn shall be and remain in the said H. B. Sanborn, and may be sold and conveyed by the said H. B. Sanborn for such prices and upon such terms and conditions as he may see fit: Provided, however, that one-half of the net profits arising from the sales of said lands shall belong to the said O. H. Nelson, but the interest of the said Nelson therein shall be retained and applied by the said Sanborn to the payment of the indebtedness of the said Nelson, and provided, further, that after the payment of all indebtedness on and obligations assumed against the said lands, and of the full payment of all indebtedness to said H. B. Sanborn, the said lands then remaining unsold, if any, shall be equally divided on the basis of value between the said H. B. Sanborn and O. H. Nelson, and the said H. B. Sanborn shall execute and deliver to the said O. H. Nelson, a deed of conveyance to his portion thereof.

"Fifth. It is understood that the said O. H. Nelson in the interim between this date and Oct. 1st, 1907, may continue the sales of his said lands at retail through the agencies now existing with Eli Browning and George Knoblauch Land Company, and shall use and apply the proceeds as under the arrangements and agreements now existing, but should the said Nelson at any time attempt to sell and convey said lands in any manner other than through such regular channels, and in a manner that would or may defeat the rights of the said H. B. Sanborn, such acts shall constitute a breach of this contract, and the said deed this day placed in escrow shall be delivered to the said H. B. Sanborn and may be placed of record by him, and no rights or profits shall belong to the said O. H. Nelson, and the said H. B. Sanborn shall be and become the full and absolute owner of said lands."

Neither the integrity of this agreement nor the right of Smith to deliver the quitclaim deed referred to is attacked, but appellee alleges that "there never has been a complete settlement of the partnership business, that the defendant (appellant) has the books of said partnership, and that said business as well as all property both real and personal in connection therewith is entirely in the hands of the defendant, and he has excluded the plaintiff from the possession and use of said books as well as from the possession and use of said property; that defendant has failed to keep fair and correct books of accounts of the transactions which he has had respecting plaintiff's said lands and respecting plaintiff's said interest in said personal property, and instead of keeping separate books respecting plaintiff's land so as to show what expenditures have been made thereto, and what receipts, incomes, revenues, and what proceeds of the sales of said lands have been received, said defendant has wrongfully mingled and mixed plaintiff's said lands and defendant's lands deeded to him by Swift, and has confused and mingled together the expenditures alleged to have been made on behalf of plaintiff's lands and in respect to said personal property with expenditures made in respect to his own lands in said ranch, and not only that, but, in addition thereto, the defendant has mixed and commingled with expenditures claimed to have been made on behalf of plaintiff's lands and property, the expenditures and expenses, outlays, and disbursements made by him in the various and sundry individual transactions and in the numerous lines and branches of business, trades, transactions, loans, and innumerable deals, contracts, and other matters in no way connected with or related to plaintiff's lands, and that neither defendant nor any other person can determine from defendant's books what proportion, if any, of said expenses have properly and legally been made for the purpose for which defendant has the right to make outlays on behalf of plaintiff's lands and property." Some other allegations are made as the basis of the action, but they amount to no more than allegations of overcharges in expenses, want of proper care, and waste of personal property and misappropriation of some notes acquired before the partition, and we think it unnecessary to make further reference to the petition.

In support of the court's order, much stress is laid in behalf of appellee upon the contentions, first, that the transactions detailed in the petition constitute appellee and appellant partners in the matter to which they relate; and, second, that the agreement and quitclaim deed of June 1, 1907, were intended as security only and amount to no more than a mortgage, and hence that our statute authorized the appointment. In the view, however, that we have taken of the case, these questions are not material to the conclusion we are now called upon to make; for whether one or the other or both contentions be correct, in order to justify the appointment of a receiver, it must be shown that the property or funds involved in the controversy are in danger of being lost, removed, or materially injured, as will be seen from Rev. St. 1895, art. 1465, which reads, so far as here pertinent: "Receivers may be appointed by any judge of a court of competent jurisdiction in this state, in the following cases: (1) In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to his claim, or between partners or others jointly owning or interested in any property

or fund, on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured. (2) In an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property when it appears that the mortgaged property is in danger of being lost, removed, or materially injured, or that the condition of the mortgage has not been performed, and the property is probably insufficient to discharge the mortgage debt."

This necessary element of danger of loss or injury, however, does not appear. Upon the hearing of the application for the receivership appellant presented affidavits, depositions, and testimony specifically denying the material allegations of appellee's petition relating to waste or injury of the personal property, and as opposed to this we have only appellee's unsupported affidavits. It is also undisputed that all but a very small part of the land claimed by appellee remains undisposed of, and that prior to the appointment of the receiver appellee had caused to be filed in the proper counties a lis pendens notice of his suit which protects him from any possible loss or injury from an unauthorized sale or disposition of his interest in the lands involved in the controversy. See Gen. Laws 1905, p. 316; High on Receivers (3d Ed.) § 561. Complaint cannot be legally made that appellee has been excluded from the business in view of the unimpeached voluntary agreement of June 1, 1907, which so contemplates, and, if there be improper book entries, overcharges, etc., full relief can be afforded appellee in a trial upon the merits. The evidence shows that appellant is a man of large means, and his solvency is but indirectly, if at all, questioned. So far, therefore, as we can be informed by the record, he is amply able to respond in damages for whatever loss or injury, if any, he may have occasioned appellee. Indeed, appellee's failure to show appellant's insolvency together with the affidavits and evidence denying the material allegations of waste, etc., constitutes a complete answer to appellee's application. See Falfurrias Immigration Co. v. Spielhagen (Sup.) 127 S. W. 164; High on Receivers, § 24.

We conclude that the order appealed from should be set aside and the receivership vacated, and it is so ordered.

### On Motion for Rehearing.

In view of the very earnest and able argument on the motion for rehearing, we should perhaps briefly add to what was said in our original opinion. It is urged that, in order to authorize the appointment of the receiver in cases of partnership, it is not necessary that it be "shown that the property or fund is in danger of being lost, removed or materially injured," as required by Rev. St. 1895, art. 1465, and the case of Rische v. Rische, 46 Tex. Civ. App. 23, 101 S. W. 849, and Holder v. Shelby, 118 S. W. 590, are pressed upon us as sustaining this contention. We think we need not stop to consider whether the construction of the statute given in these cases be correct as they are easily distinguishable from the case here. In those cases it was expressly held that the fact of partnership had been established, and that the further fact of the exclusion of the complaining party from participation in the partnership business justified the receivership, stress being laid, in the leading case, on article 1492 of the Revised Statutes. Here, however, contrary to appellant's contention, no partnership was in existence at the date of the application for the appointment. It is specifically denied by verified plea of appellee, and appellee thus alleges the fact in his amended petition: "Plaintiff says that there has been an actual termination of the partnership relations between himself and defendant, but that there has never been a complete settlement of the partnership business." This logically means that there is neither a partnership nor one in process of dissolution. It is already dissolved. As made by appellee's petition, this seems to be a case where a partnership once existing has been dissolved with an express written agreement authorizing the principal owner of the partnership property to retain possession of at least the principal part thereof and sell it and out of the proceeds to pay himself for large advances and divide the remainder, if any. In other words, at best, appellee would seem to be in the main but a contingent creditor of the managing partner, and in no event entitled to the appointment of the receiver without showing danger of loss or injury. See City Nat. Bank of Dallas v. Dunham, 18 Tex. Civ. App. 184, 44 S. W. 605; People's Inv. Co. v. Crawford, 45 S. W. 738; High on Receivers, §§ 3–511. But it may be said and in effect is said, as we understand, that the agreement giving appellant right of possession and power of sale does not comprehend the personal property and choses in action specified in appellee's petition, and that as to such property at least the appointment of the receiver was justified. It is evident from the record, however, that this property constitutes but an inconsiderable part of the whole over which the receiver was given dominion, and that, as to such property, appellee at most is but a joint owner entitled to partition, and hence afforded other adequate remedies. If, as we think must be admitted, appellee makes no case for the appointment of the receiver as to the real estate in view of the uncontested agreement relating thereto, the court's order as a whole should not be sustained because of allegations pertinent to the relatively small personal estate, especially as ap-

pellant's controverting affidavits deny the material allegations relating to waste, injury, or danger of loss.

It is further strenuously insisted that the trial court passed upon the facts and that his findings thereon are conclusive; the case of Cemetery Co. v. Drew, 13 Tex. Civ. App. 536, 36 S. W. 802, being cited in support of the contention. In so far as the case referred to may be said to so hold, it seems to be in necessary conflict with the case of Falfurrias Immigration Co. v. Spielhagen, 127 S. W. 164, cited in our original opinion, in which our Supreme Court specifically holds that a receiver should not be appointed in cases where the material allegations of the petition therefor are denied under oath. Moreover, the rule giving conclusive effect to the trial court's finding upon a conflicting state of facts, in our judgment, has no application where there has been no trial upon the merits, and where, as here, the facts under consideration are evidenced by written affidavits pro and con submitted upon the hearing of an application for an ancillary order.

We conclude that the motion for rehearing should be overruled.