### KEEP 'EM EATING CO. v. HULINGS.

No. 9341.

Court of Civil Appeals of Texas. Austin.

Oct. 14, 1942.

Rehearing Denied Nov. 4, 1942.

Storey, Sanders, Sherrill & Armstrong, of Dallas, for appellant.

Elton M. Hyder, of Fort Worth, for appellee.

BLAIR, Justice.

Appellee, H. C. Hulings, sued appellants, Fred M. Jack and Jo Jack, partners doing business as "Keep 'Em Eating Co.," upon a contract made a part of the petition. The contract provides that appellee owns "certain exclusive privileges for the selling of food, drinks, and tobaccos, in areas located inside and near Camp Hood near the city of Killeen, Texas;" and that he would use his best efforts to secure additional areas inside Camp Hood for the same purpose; that he "sells and transfers all such rights and leases" to appellants, for which appellants agree to "pay * * * the sum of one hundred and fifty dollars ($150.00) for each and every unit known as a mobile Keep 'Em Eating lunch wagon located on * * * areas, at the time of moving on such location, and further a sum of four and one-half per cent (4½%) of the daily gross business of each unit, payable daily or weekly or at the option" of appellee; that appellee was to have access to all books and cash registers at all times; and that appellee, on account of "participation in the revenue, * * * agrees to use his best efforts to secure all business possible for the above mentioned units." The contract further provides that appellants should establish a minimum of three units on each area, for which appellee had the exclusive rights, and the contract was to continue in force so long as appellee had control "of the above mentioned concessions in above mentioned areas;" but that if the operations of appellants were terminated for violation of standard rules and requirements, the locations would revert to appellee; and that appellants might terminate any one or all of the units in the event their operation proved unprofitable.

Appellee alleged that appellants placed four units in operation, but had not paid the 4½% of the gross revenues thereon after May 16, 1942, and refused to permit appellee to see the books of the business; that by virtue of such operations appellee was entitled to 4½% of $2,000 which had been deposited in the First National Bank of Killeen, Texas, in the name of O. G. Hudson, agent. He further alleged that he secured three areas under his contract, which would have required appellants to establish nine units, but that they established only four units; and appellee sought damages for breach of the contract for $150 each for the five units which he alleged appellants should have established, and for 4½% of the gross revenues thereon, which he alleged would have been equivalent to the gross revenues of the four units established. Appellee further alleged that appellants had forfeited their rights under the contract; that he was entitled to repossession of the areas; that appellants had refused to pay him, and that he feared they would remove the property from the premises and would dissipate the funds, of which he alleged he was joint owner; and upon information and belief alleged that appellants were unable to respond in damages. Appellee further alleged that he had no other adequate remedy, and prayed for the physical delivery of all of the personal property of appellants, together with the money in the bank, to a receiver, and that the receiver be appointed immediately and without notice to operate the business; and alleged that neither of the appellants was in the city and that the whereabouts of one appellant was not known, and that notice could not be served upon them. Appellee further alleged that by virtue of the contract he had a landlord's lien upon the personal properties of appellants used in the operation of the various units, and that by virtue of the contract he had an interest in the operation of the properties and the gross revenues therefrom, and in the money which had been deposited in the Killeen bank by Hudson as agent of appellants.

Appellee also sued the First National Bank of Killeen, alleging that the deposit in the name of O. G. Hudson, agent, should be impounded and delivered to the receiver.

The trial court appointed a receiver, without notice, upon this petition, which was sworn to, affiant stating that the facts therein stated were true and correct; but as

to the insolvency of appellants he stated in the body of the petition that the allegations were based upon information and belief.

We are of the view that the trial court erred in granting the receivership without notice.

■■■ The contract provided for the lease of concessions or locations in the army camp. It did not give appellee any interest in the business, nor in its operation. It merely provided that upon location of the units in the areas appellants would pay appellee $150 for each unit, and a further consideration of 4½% of the gross revenues of the operations, which was to be paid to appellee daily or weekly at his option. If appellee held a landlord's lien on the properties of appellants by virtue of the contract, upon which question we need not pass, his remedy would not have been a suit for the rents with the ancillary appointment of a receiver, but a statutory distress warrant. The purpose of the distraint statutes, R.S.1925, Arts. 5227, 5239, is to provide for the issuance of the distress warrant to secure a speedy and effective remedy by which a tenant's property may be distrained and preserved until proper proceedings for the foreclosure of the landlord's lien can be initiated and prosecuted. McKee v. Sims, 92 Tex. 51, 45 S.W. 564. This would have furnished appellee an effective remedy less drastic than a receivership, and the rule is that "a receiver will not be appointed without notice, if the status of the property can be maintained and the rights of the applicant protected pending a hearing by the issuance of a restraining order or temporary injunction, or by any remedy less drastic than a receivership." 36 Tex.Jur. 108, and cases there cited. See also 27 Tex.Jur. 184-188, relating to right of a landlord to distrain property of a tenant for rents or advances. Moreover, if appellee was part owner, or had an interest in the $2,000 deposited in the bank, or was entitled to have all of such funds subjected to his debt, which questions do not have to be decided on this appeal, he was not entitled to a receivership of the funds, because a restraining order or temporary injunction against either Hudson, the agent in whose name the funds were deposited, or against the bank, which was a party to the suit, would have fully protected any right of appellee in the funds pending a final adjudication of his alleged lien, interest in the funds or property, or to have same subjected to his debt or claim. Either a temporary restraining order or a temporary injunction would have afforded appellee a complete and adequate remedy less drastic than the receivership granted, but neither is authorized where the petition fails to disclose an urgent and immediate necessity therefor. "Appointment of a receiver without notice to the adverse party is one of the most drastic remedies known to the courts and should be exercised only in extreme cases, where the right thereto is clearly shown, and then in the exercise of great caution by the court." Shell Pet. Corp. v. State, Tex.Civ.App., 86 S.W.2d 245, 247. Appellee's suit was simply one for alleged debt and damages arising from breach of contract, and he alleged no fact which tended to show that the delay incident to giving notice of the appointment of the receiver would result in injury to plaintiff; and there was no allegation that a receiver in the conduct of the business could do anything more than was being done by appellants. See Reed v. Spiller, Tex.Civ.App., 118 S.W.2d 654, which involves failure to keep inventory and make reports of a business.

■■■ Nor did appellee allege any fact or facts showing that the property or funds were in danger of being lost, removed or materially injured. He did allege that he feared same would be lost, removed or destroyed, but no act on the part of appellants was alleged which tended to sustain the general conclusion alleged. Having failed to allege specific facts in this respect, appellee did not bring his case within any provision or subdivision of Art. 2293, because before a receiver will be appointed without notice facts showing an urgent or immediate necessity therefor must be alleged, and this is true whether the appointment is sought pursuant to the "usages of the court of equity" or in a case for which specific provision for a receiver is made by the statute. The provisions of Sub. 1 of Art. 2293, authorizing appointment of a receiver in an action by a creditor to subject property or fund to a lien, or in an action between parties jointly owning or interested in any property, or having a probable interest therein, are applicable only where it is shown "that the property or fund is in danger of being lost, removed or materially injured," which requirement is but declaratory of the equitable doctrine that before a

receiver will be appointed without notice facts showing an urgent or immediate necessity therefor must be alleged. See Massey v. Greenwood, Tex.Civ.App., 56 S.W.2d 1103; City Nat. Bank v. Dunham, 18 Tex.Civ.App. 184, 44 S.W. 605; Wichita Royalty Co. v. City Nat. Bank, Tex.Civ. App., 36 S.W.2d 1057; Delcambre v. Murphy, Tex.Civ.App., 5 S.W.2d 789; Junkin v. Sterchi Furniture Co., Tex.Civ. App., 92 S.W.2d 1098; Underwood v. Clark, Tex.Civ.App., 103 S.W.2d 199; and Johnson v. Williams, Tex.Civ.App., 109 S.W.2d 213, 214, wherein it is held that the appointment of a receiver ex parte is not authorized where the petition fails to disclose an urgent and immediate necessity therefor, the court holding that: "The right to a day in court and the privilege of being heard before judgment is a constitutional guaranty, the very essence of due process of law. Receiverships should never be appointed, except in dire necessity."

The order appointing the receiver is reversed and the receivership is set aside.

Order reversed and receivership set aside.