**GARLAND GRAIN COMPANY, Appellant,**

**v.**

**Richard E. BAILEY et al., Appellees.**

**No. 16583.**

Court of Civil Appeals of Texas.

Dallas.

July 9, 1965.

Rehearing Denied Oct. 1, 1965.

McCulloch, Ray, Trotti & Hemphill and Joe H. McCracken, III, Dallas, for appellant.

James H. Martin, Dallas, for appellees.

BATEMAN, Justice.

This is a suit for a balance of commission or fee alleged to be due to appellees Richard E. Bailey and A. L. Greer for the services of Bailey and one L. W. Allen in obtaining for appellant Garland Grain Company the construction of a grain facility or warehouse. The appellant appeals from an unfavorable judgment based upon a jury verdict. The record requires that this judgment be affirmed. The facts out of which the claim arose are summarized as follows:

*Facts*

L. W. Allen executed and delivered to Garland Grain Company an instrument dated February 3, 1960, as follows:

"Garland Grain Company
Garland, Texas

Gentlemen:

The undersigned proposes to furnish and erect complete a Parkersburg steel grain storage building size 100′ × 300′ × 20′ according to the plans and specifications furnished by the Parkersburg company and the suppliers of the aeration and operating equipment on your property at Garland, Texas and furnish the additional material and equipment completely installed as follows:

| | |
|---|---|
| Concrete | 18,500.00 |
| Erection | 10,875.00 |
| Aeration | 6,552.00 |
| Electrical | 3,000.00 est. |
| Scale | 9,500.00 allowed |
| Building and freight | 57,619.00 |
| Platform and ladders | 300.00 est. |
| Fill and grade | 1,200.00 est. |
| Conveyor system (Remainder of money left over from other contracts to be used here) | |

The above prices are firm with the exception of the electrical, scale, conveyors and fill and grade. These are to be negotiated so that the capital installation shall not exceed $118,318.40 all of which shall be spent on the installation. Any savings made on the items listed above shall be applied on the conveyor system.

No interiam (*sic*) financing from Garland Grain Company shall be required. The First National Bank of Garland shall be names (*sic*) escrow agent for the purpose of handling funds for the contracts out of the balance of the F.A.C. loan proceeds after Parkersburg has been paid.

The above installation shall be completed for Commodity Credit Corporation approval in regard to their requirements for grain storage installations for the sum of $134,000.00 of which sum a loan from F.A.C. for the amount of $118,318.40 has been obtained. The balance paid in cash and other considerations which is hereby acknowledged as paid in full.

Accepted by: /s/ Jack C. Parsons            /s/ L. W. Allen
                    President, Garland Grain Co.                                      "

As shown, this proposal was accepted by Jack C. Parsons as President of Garland Grain Company; and simultaneously he, in the same capacity, gave to L. W. Allen and R. E. Bailey an instrument reading as follows:

"GARLAND GRAIN
COMPANY
Garland, Texas
February 3, 1960

"Mr. L. W. Allen
Mr. R. E. Bailey
1920 Adolphus Tower
Dallas, Texas

Gentlemen:

For services rendered in the connection with the establishment of a Parkersburg Grain Storage building with an estimated capacity of 650,000 bushels of grain we hereby agree to pay to you $16,000.00 as follows:

The following payment schedule is based on the receipts of payments earned by the above grain storage building only and not from any other facility owned or operated by the Garland Grain Co.

Based upon gross cash receipts earned by either storage or handling of grain in this building, at such time as receipts reach the sum of $80,000.00 you shall be paid the sum of $8,000.00.

Based on the same rate as above, after the initial payment you shall be paid quarterly at the ratio of 10% of the gross income until such time as the entire sum of $16,000.00 has been paid.

/s/ Jack C. Parsons
Garland Grain Company          "

Bailey and Allen worked together and agreed to divide equally the $16,000 commission. Bailey arranged with the Parkersburg Rig & Reel Company for the purchase of the prefabricated steel grain storage building; and Allen arranged for the installation of the concrete foundation, the erection of the prefabricated building, the installation of electrical service, etc., and supervised the work. The building was finished and accepted by appellant.

By agreement of the parties, $4,000 of the $16,000, which appellant agreed to pay Bailey and Allen, was evidenced by four $1,000 promissory notes, two of which were payable to Bailey and two to Allen. Appellant paid Allen $8,000, including the two $1,000 notes payable to Allen, but refused to pay Bailey anything. Bailey transferred and assigned his two $1,000 notes to appellee Greer, but it was stipulated that Greer was not a bona fide purchaser for value. Greer sued on the two notes and Bailey sued for his $6,000, and the two suits were consolidated for trial.

Appellant denied liability on the grounds that Bailey and Allen had not fully performed their agreement, in that Allen had been derelict in supervising the construction and Bailey had not obtained the "interim" financing as he had agreed to do. The only reference to the latter in either of the written contracts, is in the proposal signed by L. W. Allen, in which occurs this sentence: "No interiam (*sic*) financing from Garland Grain Company shall be required." Parsons testified that Bailey defnitely agreed to obtain interim financing (which we understand to mean a temporary loan to appellant for the payment of the costs of construction as they accrue, the temporary lender to be repaid when the "permanent financing" or loan is obtained), but that he was unable to obtain it. Bailey testified that he agreed to obtain the permanent financing and to help get the interim financing, but denied that he definitely agreed to obtain the latter. He appears to have arranged for the permanent loan from the First Acceptance Corporation. He testified that he was unable to obtain the interim financing because of the unsatisfactory financial statement of appellant. In any event, apparently in order not to lose the sale, the Parkersburg Rig & Reel Company agreed to and did see that there was money available for the interim financing through a local bank. It was also shown

that Allen supervised to the point of getting the work well under way, after which it was supervised by a representative of the Parkersburg company. There was no evidence of any loss or serious inconvenience suffered by appellant because of any failure of Bailey or Allen to perform any part of their contract. It was stipulated that appellant's gross cash receipts had been more than $160,000.

## Opinion

Appellant's first point of error on appeal asserts error in the overruling of its motion for judgment *non obstante veredicto* because (a) there is no evidence that Bailey and Allen performed material obligations owed by them to appellant under the contract, and (b) the undisputed evidence showed conclusively that appellant had to perform certain of Bailey's and Allen's said obligations. The second point challenges the sufficiency of the evidence to support the verdict. We find no merit in either of these points.

In the first place, there was a dispute as to whether Bailey was obligated to obtain the temporary loan; the written contract does not expressly so obligate him. In the second place, even if there were an implied obligation on Bailey or Allen to do so, the temporary financing was in fact arranged for and obtained by Parkersburg Rig & Reel Company, and appellant is in no position to deny its liability for the agreed commission or fee because some third party performed a certain portion of Bailey's and Allen's implied obligation, so long as this was accomplished without loss or damage to appellant.

In suits to recover the contract price agreed upon for construction of a building, where it appears that the contractor has in good faith substantially performed, he will be allowed to recover on the contract notwithstanding slight deviations therefrom, and the true measure of his recovery is the contract price less the damages sustained by his failure strictly to perform. Atkinson v. Jackson Bros., Tex.Com.App., 270 S.W. 848, 38 A.L.R. 1377; Graves v. Allert & Fuess, 104 Tex. 614, 142 S.W. 869, 39 L.R.A.,N.S., 591; Cooper Concrete Co. v. Hendricks, Tex.Civ.App., 386 S.W.2d 221, no wr. hist.; 10 Tex.Jur.2d, Building Contracts, p. 25, § 21. We can think of no reason why this sensible rule should not be applied to this case. World Broadcasting System v. Eagle Broadcasting Co., Tex.Civ. App., 162 S.W.2d 463, wr. dism., would indicate that it should, for it was there held that the plaintiff's failure to perform one of several independent covenants making up the contract sued on would not preclude recovery, and that a covenant going only to a part of the consideration on both sides should be regarded as "independent" unless this would be contrary to the expressed intent of the parties.

Therefore, we hold that there was evidence of probative value that Bailey and Allen substantially performed their contract, that the undisputed evidence showed that appellant sustained no loss or damage from any deviation by them or either of them from the contract, that there was sufficient evidence to support the verdict, and that the verdict is not so against the great weight and preponderance of the evidence as to be clearly wrong. Accordingly, appellant's first and second points are overruled.

By its third point of error the appellant asserts error in the submission of the sole special issue to the jury because said issue amounted to a general charge and did not submit an ultimate controlling issue of fact. We consider this point to have been waived.

The case was submitted to the jury on July 28, 1964; the verdict was returned July 29, 1964; the judgment was rendered October 9, 1964; and appellant's objection to the charge of the court was filed on January 7, 1965. Even if under the liberal regulations set forth in Rule 272, Vernon's Texas Rules of Civil Procedure, we were

to overlook the fact that the objection was filed several months after the conclusion of the trial and presume that the objection was dictated to the court reporter before the charge was submitted to the jury and subsequently transcribed, nevertheless there is nothing in the transcript to indicate definitely that this was done or, even if it was, that the objection was ever called to the attention of the court or that the court acted on it. Rule 272 provides that when the objections to the charge are dictated to the court reporter at the time of trial and subsequently transcribed they shall bear the court's ruling and official signature. No such ruling or signature appears in this record.

Rule 272, T.R.C.P. provides also that objections not made *and presented* in the manner set forth therein shall be considered as waived; and this has been held to follow even when the objection is that the special issue in question is a general charge. 3-A Tex.Jur., Appeal and Error, § 174, p. 223; Seymour v. Texas & N. O. R. Co., Tex.Civ. App., 209 S.W.2d 814, 816, wr. ref.; Alderete v. Cabello, Tex.Civ.App., 278 S.W. 950, no wr. hist.; Ball v. Henderson, Tex. Civ.App., 228 S.W. 361, no wr. hist.; Indemnity Ins. Co. of North America v. Sparra, Tex.Civ.App., 57 S.W.2d 892, 898–900, wr. dism.; National Life & Acc. Ins. Co. v. Bennett, Tex.Civ.App., 73 S.W.2d 676, no wr. hist. Therefore, the third point is overruled.

By its fourth and fifth points of error appellant complains of the admission in evidence of an unsigned copy of a chattel mortgage and a copy of a telegram. The sixth and seventh points assert error in the exclusion of two letters offered by appellant, neither of which was addressed to appellees, or to Allen, or written by or at the direction of either of them. It would add nothing to the jurisprudence of the State for us to describe these four writings in greater detail, or to write at length on the applicable rules of evidence. Suffice it to say that in our opinion all four rulings of

the court were correct, and that appellant has not carried the burden of demonstrating that, if any of them were erroneous, prejudicial harm resulted to appellant thereby. Rule 434, Vernon's Texas R.C.P. Points four through seven are overruled.

Affirmed.