Edwin I. McKELLAR, Jr., Appellant,

v.

Searcy BRACEWELL et al., Appellees.

No. 15790.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Sept. 9, 1971.

Rehearing Denied Nov. 11, 1971.

Second Motion for Rehearing Denied
Dec. 2, 1971.

Newton B. Schwartz, Houston, for appellant; Edwin I. McKellar, Jr., Houston, of counsel.

Grant Cook, Houston, for appellees, Joe H. Reynolds and William H. White; Reynolds, White, Allen & Cook, Houston, of counsel.

William H. Vaughan, Houston, for appellees, Searcy Bracewell, Fentress Bracewell, Harry W. Patterson, Harold R. DeMoss, Jr., William Key Wilde, Carlton Wilde and Joseph Jaworski.

COLEMAN, Justice.

This is an appeal from a judgment based partially on a jury verdict and partially on certain stipulations. The suit involves an alleged breach of contract. Appellant is a former member of the law firm of Bracewell, Reynolds and Patterson. The Bracewell appellees are certain of the partners of the firm, Bracewell, Reynolds and Patterson, and the Reynolds appellees are former partners in the law firm. Appellant and all appellees were formerly all partners in the law firm. The breaking up of the firm occasioned the suit. Appellant sued all of his former partners for breach of contract and for actual and exemplary damages. The trial of the issue of damages was ordered tried separately from the issue of breach of contract. A jury returned a verdict, in answer to special issues, finding, generally, that appellant agreed to withdraw from the partnership, that the remaining partners relied on this agreement, and that there was no breach of the partnership provisions. An attempted appeal from this verdict and judgment was dismissed for want of jurisdiction, there being no final judgment. McKellar v. Bracewell, 437 S.W.2d 319 (Tex.Civ. App.—Houston, 1st Dist., 1969, writ ref'd). The litigants thereafter stipulated to the amount of damages, and one final judgment was entered incorporating the jury findings and the stipulations. The appeal has been perfected.

All parties are practicing attorneys. Appellant was hired as an associate in the law firm of Bracewell and Tunks in October of 1954. In January of 1957, he was made a partner, and given a percentage interest in the firm's assets, including the unbilled hours at that time. A subsequent written partnership agreement, signed by all the parties to this suit, was executed on March 28, 1964.

On February 1, 1966, Reynolds tendered his resignation, followed two days later by that of White. These resignations, to take effect June 1, 1966, were unanimously accepted by the remaining partners, including McKellar, on February 4, 1966. That same day, all the remaining partners except McKellar met informally. No meeting was called, and apparently the firm members merely gravitated to one office at different times in the afternoon. All of them expressed a desire to continue to practice law together, with McKellar excluded. Three days later after the weekend, the seven met again and reaffirmed their desires to practice together without McKellar. The three senior members of the seven were delegated to approach McKellar with their decision. Reynolds and White were in no way involved in the meetings or the decision.

On February 11, 1966, the three senior partners met with McKellar. They informed him of the informal meeting and the eventual decision to practice law without him. McKellar admitted that his response was, "I'm not going to stick around somewhere where I'm not wanted." They then discussed tentative arrangements to employ McKellar on a retainer basis for the remainder of the year to complete work on certain files on which he had been working. The three senior partners testified that they thought they had reached a satisfactory arrangement with McKellar for his withdrawal from the firm under the Voluntary Withdrawal provisions of the partnership agreement, and that the date of withdrawal would be the same as that of Reynolds and White.

Thereafter, McKellar proceeded to bill out as many of his unbilled hours as was possible, and urged others to do likewise. McKellar made no attempt to approach any of the partners concerning the causes of their desire to practice without him. Reynolds and White moved their withdrawal date up to March 15, 1966 and did vacate the officers on or about that date. The managing partner addressed a memo to McKellar on March 15, 1966, stating that it was the date of Reynolds' and White's withdrawal, and would also be considered McKellar's withdrawal date. Thereafter followed details of the withdrawal and the respective interests of the parties. The last paragraph dealt with the arrangements for the retainer of McKellar for certain work on the files. McKellar received the memo, and made no protest to anyone.

Subsequently, McKellar refused to sign a letter acknowledging that he had voluntarily withdrawn from the firm, contending that he had not been given notice of the meeting at which the remaining partners decided to practice law without him. He contends that this failure to give notice as required by the partnership agreement, breached the contract and served to dissolve the partnership. Thereafter, McKellar vacated his office on April 30, 1966,

taking some 20 to 30 files with him, claiming a lien thereon.

The jury found, in answers to 14 special issues, that: 1) McKellar was not involuntarily excluded by the defendants on February 11, 1966; 2) McKellar accepted the offer of a monthly retainer for certain matters; 3) he performed some of the services pursuant to that agreement, and 4) he has stood ready, willing and able to perform said agreement. Further, 5) McKellar agreed on February 11, 1966, to withdraw from the firm, and 6) the seven remaining partners relied on the agreement until after March 15, 1966; 7) the agreed withdrawal date was the same as Reynolds and White, and 8) the remaining seven relied on this until after March 15, 1966. McKellar, by his words and conduct 9) led the Bracewell defendants to believe that he had agreed to withdraw, and 10) withdraw when Reynolds and White did, and 11) that there was no necessity to call a meeting pursuant to the partnership agreement to effect his withdrawal; 13) McKellar waived the notice provision of the partnership agreement relative to a meeting to withdraw a partner, and 14) McKellar's letter of March 31, 1966, set out certain conditions with respect to his retainer which had not been previously agreed upon.

■ Appellant's first two points of error complain of the trial court's refusal to admit evidence concerning the value of the unbilled hours of the firm, and the pretrial order ordering separate trials of the issues of the breach of contract and the damages. If the pretrial order was not error, neither was the refusal to admit testimony concerning the unbilled hours.

Rule 174(b), Texas Rules of Civil Procedure, specifically provides: "The court in furtherance of convenience or to avoid prejudice may order a separate trial of any . . . separate issue or . . . issues." The use of the word "may" has been held to import the exercise of discretion. Womack v. Berry, 156 Tex. 44, 291 S.W.2d

677 (1956). Appellant places strong reliance on Iley v. Hughes, 158 Tex. 362, 311 S.W.2d 648 (1958), where the Supreme Court held that separate trials on the liability and damages issues in a personal injury case was not permitted. In a more recent expression of the doctrine, the Dallas Court of Civil Appeals said: "Our Supreme Court has held several times that the issues of liability and damages in tort cases are indivisible and it is improper to reverse a judgment and remand the case for trial on the issue of damages only." Roberts v. Mullen, 446 S.W.2d 86, 89 (Tex.Civ.App.—Dallas 1969, writ ref., n. r. e.).

It appears, however, that the rule of Iley v. Hughes has been applied primarily in personal unjury tort actions. It is recognized that such cases have been accorded a special place in the jurisprudence of our State. By the express terms of Rule 174(b), supra, the trial court has wide discretion to order separate trials when judicial convenience is served and prejudice avoided. In the present case, the order granting separate trials served these salutary purposes. A prolonged inquiry into the unbilled hours and the meticulous evaluation of assets, admittedly a process which would have considerably extended the trial of this case, was avoided. Instead, a determination by the jury that the partnership·contract had not been breached served to avoid the necessity of a protracted trial on the pleaded damages. Convenience was served without doing violence to the rights of the parties. Recent opinions have tended to view the discretion of the trial judge in this regard broadly. See: Hunt v. Hunt, 453 S.W.2d 377 (Tex.Civ. App.—Houston, 14th Dist., no writ, 1970), and Terrell v. Nelson Puett Mtg. Co., 446 S.W.2d 742 (Tex.Civ.App.—Austin 1969, no writ). The granting of separate trials was not error.

██ Appellant's third and fourth points of error complain of the trial court's refusal to grant a receiver to collect the assets of the firm, and the court's order relieving appellees of the obligation to furnish bond, required by a previous order, to secure appellant in any recovery he may obtain. Both points are devoid of merit. The statute authorizing the appointment of a receiver is couched in permissive terms. Vernon's Annotated Texas Revised Civil Stat. Art. 2293 (1964). Receivership is a harsh remedy, and will only be employed in extreme cases. Rogers v. Rogers, 150 S. W.2d 139 (Tex.Civ.App.—Dallas 1941, no writ). Generally, the partnership property must be in danger of being lost, removed or materially injured in order to warrant the appointment of a receiver. M. Guerra & Son v. Manges, 442 S.W.2d 441 (Tex. Civ.App.—Waco 1969, writ dism.); Sanborn v. Nelson, 134 S.W. 855 (Tex.Civ. App.1911, no writ). See also: Webb v. Allen, 15 Tex.Civ.App. 605, 40 S.W. 342. Appellant did not claim that the assets of the firm were in danger of being lost, removed or materially injured. The .firm was completely solvent. The trial court did not abuse his discretion in dispensing with the bond. There was no error in not appointing a receiver.

██ Appellant's fifth and sixth points of error complain of the trial court's granting appellees' motion in limine and refusing appellant's motion in limine. Appellees' motion in limine sought restrictions on questions concerning the billing practices of the firm. Aside from the fact that these matters were fully developed at the trial, the court's order merely required the attorneys for the parties to approach the bench before delving into the subjects of the motions. Appellant's motion in limine, regarding impeachment on collateral matters, was denied, but before the subject was broached at the trial there was a discussion at the bench. No injury to appellant was shown. The granting or refusal of a motion in limine, in the usual case, cannot form the basis for a reversal of a judgment. Hartford Accident and Indemnity Co. v. McCardell, 369 S.W.2d 331 (Tex.1963). The fifth and sixth points of error are overruled.

■ Appellant's seventh point of error complains of the court's refusal to declare that the twelfth and fifteenth paragraphs of the partnership agreement amount to a forfeiture. These paragraphs respectively deal with voluntary and involuntary withdrawal from the partnership. Appellant urges that this case is controlled on this point by Jones v. Chester, 363 S.W.2d 150 (Tex.Civ.App.—Austin 1962, writ ref., n. r. e.). Jones v. Chester involved the breakup of a medical partnership. When Dr. Jones withdrew, his whole interest in the partnership was deemed, under the partnership agreement, to be liquidated damages to the remaining partners. The partnership agreement made no other provisions for withdrawal except for death, retirement or disability. The facts support the conclusion that the liquidated damages provision of the contract amounted to a forfeiture for the benefit of the remaining partners.

That case is not persuasive when applied to the facts of the instant case. The voluntary and involuntary withdrawal provisions of the partnership agreement provide for a specified recovery to a withdrawing partner in place of his common law share of the partnership assets. Without quoting the provisions, it is clear that the only difference between voluntary and involuntary withdrawal is the length of time the involuntarily withdrawing partner's interest in the billed but uncollected fees will last. The voluntary retirement provision of the contract is somewhat more favorable to the retiring partner.

Appellant was a practicing attorney when he signed the partnership agreement. He accepted the benefits of it for nearly two years. The provisions for valuing a withdrawing partner's interest in the firm do not result in a forfeiture of that interest. McKellar agreed to be bound by these provisions when he signed the agreement. There was no error in refusing to declare that the provisions amounted to a forfeiture.

■ Appellant's eighth, ninth and tenth points of error, briefed together, complain of the court's entry of partial judgment on the jury verdict, the sustaining of the Bracewell appellees' motion for judgment, and the court's refusal to enter judgment for appellant based on the jury's answers to Special Issues Numbers 2, 3, 4 and 14.

The verdict of the jury formed a proper basis for the judgment entered. The answers to the special issues exonerated appellees from any wrongdoing in connection with the departure of McKellar. Appellant failed to secure necessary findings sustaining his breach of contract action. The motion for judgment was properly granted and the judgment properly entered.

In regard to appellant's complaint of the court's failure to enter judgment based on the jury's answers to Issues 2, 3, 4 and 14, the partial judgment previously entered specifically reserved for the second trial on damages, appellant's cause of action on quantum meruit regarding the retainer arrangement. This was not error. The jury's answer to Special Issue 14 found that McKellar's letter of March 31, 1966, presented new conditions which had not been previously agreed upon. There is no evidence that from and after that date McKellar offered to or did complete the work previously agreed upon. The verdict would not support a judgment for appellant based on contract. The trial court granted appellant a judgment in the agreed amount on his cause of action in quantum meruit.

■ Appellant's eleventh, twelfth and thirteenth points of error complain of the trial court's refusal to submit to the jury three requested special issues and their accompanying instructions. These requested issues inquired about involuntary withdrawal, expulsion and involuntary withdrawal without cause. The court did not err in refusing these issues. The court submitted the controlling issues. The jury answered that McKellar was not involuntarily excluded by appellees (Issue 1),

and further that McKellar agreed to withdraw from the partnership (Issue 5). These were the controlling issues, and they were found against McKellar. The court is not required to submit varying phases and shades of the same issues. Texas Rules of Civil Procedure 279; Holmes v. J. C. Penney Co., 382 S.W.2d 472 (Tex. Sup.1964). The issues requested by appellant were merely shades of the controlling issues as submitted. No error is shown in the court's refusal to submit the requested special issues.

■ Appellant's Points 15 through 24, inclusive, and 58 through 62, inclusive, complain of defects in the manner of submission of various special issues. These points cannot be considered. No objections to the court's charge were included in the transcript. It is impossible to determine whether the claimed defects in the issues submitted were called to the attention of the trial court prior to the submission of the charge to the jury as required by Rule 272, T.R.C.P.; Edwards v. Strong, 147 Tex. 155, 213 S.W.2d 979 (1949); Wilson v. King, 311 S.W.2d 957 (Tex.Civ.App.—Austin 1958, writ ref.); Garland Grain Co. v. Bailey, 393 S.W.2d 945 (Tex.Civ.App.— Dallas 1965, writ ref., n. r. e.).

Appellant's Points of error 25 through 57 present no evidence and against the great weight and preponderance of the evidence points in regard to the jury's answers to Issues 1 and 5 through 14. Having carefully read and studied the statement of facts, it appears that there is ample evidence to support the answers of the jury complained of in these points.

■ Appellant's sixty-third through sixty-fifth points of error complain of the admission, during the trial, of certain testimony, including hearsay testimony, opinion testimony, and conclusions regarding McKellar's conduct and work. It is clear, both in the record and from the briefs, that the testimony complained of was admitted for the purpose of showing reliance on McKellar's words and conduct by the Bracewell appellees. The opinion testimony regarding McKellar's work and conduct did not invade the province of the jury and was in response to McKellar's repeated assertion that he was excluded from the partnership without cause or notice. In the context of this trial the testimony was relevant and material, and properly admitted.

■ In any event these points of error cannot be sustained because they are too general to comply with Rule 418, T.R.C.P. The points fail to direct the attention of the court to the particular error relied upon, but rather set out a complaint of error in general. Missouri-Kansas-Texas Railroad Co. v. McFerrin, 291 S.W.2d 931 (Tex.1956); Reed v. Buck, 370 S.W.2d 867 (Tex.1963). The assignments of error in the motion for new trial are equally general and fail to point out specifically the rulings against which the complaints are directed. Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960); W. T. Grant Company v. Key, 433 S.W.2d 163 (Tex. 1968); Pearce v. Cross, 400 S.W.2d 622 (Tex.Civ.App.—Ft. Worth 1966, affirmed 414 S.W.2d 457).

■ The lone issue remaining to be discussed is appellant's fourteenth point of error complaining of the trial court's action in granting appellees Reynolds' and White's motion for directed verdict. Appellant places his main reliance on the fact that the resignations of Reynolds and White, submitted on February 1, 1966 and February 3, 1966, respectively, were, by their terms, "effective June 1, 1966." Appellant argues from this that Reynolds and White were still to be considered partners for the purpose of being liable to him for the alleged breach of the partnership agreement.

McKellar had been one of the partners who accepted the resignations of Reynolds and White on February 4, 1966. It was undisputed that Reynolds and White were in no way party to the meetings attended by the remaining partners at which the de-

cision to continue practicing without Mc-Kellar was reached. Neither was consulted, and McKellar himself admitted that when he was approached and told of the decision made by the remaining partners, he did not think that they were speaking for Reynolds and White. McKellar's sole basis for attempting to hold Reynolds and White liable is that their letters of resignation were to become effective on June 1, 1966. McKellar relies on the common law doctrine of the mutual agency relationship of partners as adopted and codified in Texas Revised Civil Stat.Ann. Art. 6132b, § 9 (1970), the Texas Uniform Partnership Act (hereinafter "Act").

When a partnership comes to an end, there are basically three steps which it goes through: 1) dissolution, 2) winding up, and 3) termination. See: Act, § 30; Howell v. Bowden, 368 S.W.2d 842 (Tex.Civ.App.—Dallas 1963, writ ref., n. r. e.). The first state, dissolution, terminates all authority of any partner to act for the partnership . . . with respect to the partners. Act, § 33(1). The withdrawal of a partner from a partnership operates to dissolve the partnership as to the withdrawing partner. Kelly v. Kelly, 411 S.W.2d 953 (Tex.Civ.App.—Houston 1967, writ ref., n. r. e.). Once a partnership has been dissolved, the general agency which grew out of it terminates, and the powers implied from the relationship terminate, except for those necessary to complete the winding up of the partnership. Diversified Fruit Farms, Inc. v. Johnson, 58 S.W.2d 73 (Tex.Com.App.1933, judgment adopted), 68 C.J.S. Partnership § 355 (1950).

The resignation of Reynolds and White effected a dissolution of the partnership as to their interests in it. Under the partnership agreement, their interest was determined by their percentage interest in the firm. They did not effect a common law dissolution of the entire firm. Viewed in this light, the actions of the remaining partners, the Bracewell appellees, could not operate to bind Reynolds and White. The remaining partners were not agents for Reynolds and White in their meeting with McKellar. They were only agents for Reynolds and White for the purposes of winding up the partnership affairs of the two resigned partners.

There was no error in granting the motion of Reynolds and White for a directed verdict. Even if it were considered error, the error was harmless because of the jury verdict absolving the Bracewell appellees from liability to McKellar. McKellar's sole theory of affixing liability on Reynolds and White was the common law agency doctrine of partnerships. If the agents (Bracewell appellees) were not liable to McKellar, the principals (Reynolds and White) would not be liable either. Appellant's fourteenth point of error is overruled, and the judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

Appellant has properly pointed out that we were in error in stating that in connection with his application for the appointment of a receiver, he had failed to allege that the assets of the firm were in danger of being lost, removed or materially injured. In fact appellant alleged that he feared that his interest in the partnership properties was in danger of being lost through dissipation, inattention and neglect. The record does not demonstrate that the trial court was in error in finding that there was no such danger.

The motion for rehearing is overruled.